## COMMISSIONER OF INTERNAL REVENUE v. LAUGHTON.

### No. 9413.

Circuit Court of Appeals, Ninth Circuit.

June 29, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Paul R. Russell, and Howard D. Pack, Sp. Assts. to Atty. Gen., for petitioner.

Claude I. Parker, John B. Milliken, Loyd Wright, Herschel B. Green, and Harriet Geary, all of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is a review of a decision of the Board of Tax Appeals holding Laughton not liable for income taxation for moneys paid in the tax years 1934 and 1935 by various American Motion picture producers to Motion Pictures & Theatrical Industries, Ltd., a British corporation, hereafter called Industries, Ltd., all of whose shares, except those qualifying the directors, were owned by Laughton, for services in the United States rendered by that company to the American producers by supplying Laughton, an employee of Industries, Ltd., as an actor in their motion pictures.

Laughton was employed as an actor by the company under an exclusive contract for five years at a salary very much less than that the company received for "loaning" him to the producers. Such hiring and loaning is established practice in the moving picture industry. The Commissioner contends that the corporate entity should be ignored for income tax purposes and the compensation deemed paid directly from the producers to Laughton. The Board held the corporation had a business purpose and hence its entity intervened.

■ The Board decision was made before the Supreme Court decided Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. ——, which we consider controlling this proceeding. In that case Smith, the taxpayer, dominated a corporation of which he owned all the shares through "officers and directors [who] were [his] subordinates. * * * While its accounts were kept completely separate from those of the taxpayer, there is no doubt that Innisfail [the corporation] was his corporate self." 60 S.Ct. 356. That is to say, the corporation was "wholly owned" both as to management by the taxpayer's subordinates and as to stock interest.

Smith, having in mind reducing his taxes, sold to this "corporate self" certain of his shares of stock at a loss, which he claimed as a deduction from his taxable income. It was held that, assuming title had passed to his corporate self, he had such a command of the securities thereafter that "There is not enough of substance in such a sale finally to determine a loss." 60 S.Ct. 357.

In a long discussion the court, inter alia, states that "Indeed this domination and control is so obvious in a wholly owned corporation as to require a peremptory instruction that no loss in the statutory sense could occur upon a sale by a taxpayer to such

an entity." 60 S.Ct. 357. That the phrase "wholly owned" in this dictum regarding an instruction to the jury means something more than mere stock ownership is to be inferred from a ruling at the end of the opinion. There certain evidence of past transactions between taxpayer and corporation was admissible because the court thought "it apparent that this evidence was entirely relevant to the present issue; the history of the taxpayer's relations with the corporation shed considerable light on the actual effect of the sale in question." 60 S.Ct. 359.

Later, considering Burnet v. Commonwealth Improvement Company, 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399, in which the sole stockholder so utilized the corporation that it made a book profit and the corporation was held liable as a separate taxable entity, the court says:

"* * * A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged *tax event* is *unreal or a sham* may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property." (Emphasis supplied.) Higgins v. Smith, supra, 60 S.Ct. 358.

It is arguable that the Higgins decision means that no matter what the particular "tax event" may be, if it be more profitable to the tax collector to disregard the intervening corporate entity this must be done. However, it seems to us that if this were the intent of the court it would have said so and not spread its consideration of the cases over many pages of the opinion with such qualifying language as is quoted above.

We take the opinion to mean that the "tax event" is not an unreal attempt to use a corporation for a sham transaction, procuring an advantageous tax consequence to the taxpayer, if it may be considered as one primarily for an independent business purpose and not a transfer of assets (here Laughton's services), with a retention of their control, solely to reduce tax liability.

Applying this criterion to the instant case the question here is not whether Industries, Ltd., was formed for a business purpose. The corporation in Higgins v. Smith, supra, was formed and used for profitable business purposes causing it to pay federal and state income taxes. The question is whether Laughton's hiring of himself to Industries, Ltd., for a salary substantially less than the compensation for which the corporation supplied his services as its employee to various motion picture producers, constituted, in effect, a single transaction by Laughton in which he received indirectly the larger sum paid by the producers.

The Board made no finding on this issue. It seemed to think it sufficient to find no more than that the corporation itself had a business purpose. This places before us the determination whether the evidence warrants us to return the case to the Board with the freedom to make such a finding, or whether it permits only the finding that Laughton's transaction with regard to his services to the corporation is an "unreal and/or a sham" attempt at tax avoidance.

There is evidence here from which it might be inferred that tax avoidance by a sham transfer by Laughton of his services was the primary purpose of the use of the corporation. There is also evidence from which it may be inferred that it was not. The testimony is uncontradicted that Laughton had no intention to avoid taxes; that the purpose of engaging himself for five years as an employee of Industries, Ltd., was to join his efforts with other employees of the company to create motion pictures; that he contributed six thousand pounds to the capital of the company for his stock interest, other than the qualifying shares of his directors, and also royalties in certain enterprises in which he was interested; that he contemplated that the corporation would gather further accretions of capital by its use of his services as its agent for a time to other motion picture producers.

It is also uncontradicted that during the two tax years in question, 1934 and 1935, sufficient capital was accumulated from all these sources for the corporation's active engagement in motion picture pro-

duction at a later date; that the directors of his company were not dominated and controlled by him as in the case of Higgins v. Smith, supra, that, on the contrary, they were business men who ran the business with a free hand and never asked Laughton's permission in its conduct. It is a matter of law that the stockholders have no right to direct the conduct of the board of directors.

■ It is also uncontradicted that Laughton's motive was based on the theory "that as an actor he would die poor. He had a Gerald DuMaurier in mind who died poor and he said that he was determined while he was on the crest of the wave to safeguard his resources, that he would engage the services of the finest writers in New York and technicians and cameramen and form a renaissance of the British film industry." Laughton is an English actor and was then an artist of international renown. The Board properly could infer that one with the artistic temperament is likely to dissipate his income and that Laughton was farseeing enough to desire that compensation for his genius should be handled by independent business men.

On the other hand, it appears that Laughton borrowed heavily on secured loans from Industries, Ltd., during the tax years in question. He had a previous engagement for his services which was surrendered to the company, followed by a similar engagement directly with the company to furnish them as its employee. The minutes of the company show that he was present at many of the directors' meetings. Also there was a very wide disparity between the salary he received from the company and what he had previously been receiving as a motion picture actor, and a still wider disparity between his company salary and what was received by the company for his subsequent services.

We cannot say as a matter of law that findings of ultimate fact must be made one way or the other with reference to the issue as stated above. The administrative body must be left free to make its own inferences relevant to that issue. Our sole function with regard to administrative findings is to determine whether there is any substantial evidence to support them.[1]

We hold that the case must be returned to the Board to make the findings this opinion indicates are required.

Remanded.

1 Helvering v. Kehoe, 60 S.Ct. 549, 84 L.Ed. 751; St. Louis, etc., Ry. v. Brownsville Dist., 304 U.S. 295, 58 S.Ct. 868, 82 L.Ed. 1357; Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 82 L.Ed. 50; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Phillips v. Commissioner, 283 U.S. 589, 599, 51 S.Ct. 608, 75 L.Ed. 1289.