**Wallace J. VNUK and Frances R. Vnuk, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 79–1925.

United States Court of Appeals, Eighth Circuit.

Submitted May 22, 1980.

Decided July 11, 1980.

Paul T. Wright, Denver, Colo., for appellants.

Jonathan S. Cohen, Atty., Tax Division, App. Section, Washington, D. C., argued, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Richard N. Bush, Attys., Tax Division, Dept. of Justice, Washington, D. C., on brief, for appellee.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Wallace J. Vnuk and his wife Frances R. Vnuk appeal from a decision of the United States Tax Court upholding the Commissioner's determination of income tax deficiencies and tax penalties totalling over $75,000.00.[1] Finding no error, we affirm.

On September 9, 1972 taxpayer Wallace J. Vnuk,[2] a medical doctor principally engaged in the practice of radiology, created an inter vivos trust known as the Wallace J. Vnuk Family Estate (Trust). The purpose of the Trust was to accept real and personal property conveyed by the grantor including "exclusive use of his or her lifetime services and . . . earned remuneration accruing therefrom" so as to maximize the grantor's lifetime efforts. The Trust was established for a period of twenty-five years, but was subject to liquidation for "good and sufficient reason" by a unanimous vote of the trustees.

Dr. Vnuk named his son John J. Vnuk and his wife Frances R. Vnuk trustees of the Trust. Dr. Vnuk was later appointed a trustee at the first meeting of the board of trustees. Under the terms of the Trust Agreement, the trustees were charged with responsibility for managing the real and personal property conveyed to them, and had authority to perform and function for any purpose consistent with the Declaration of Trust and Declaration of Purpose. A majority vote of the trustees was required for most board decisions.

Beneficial interest in the Trust was denoted by certificates of beneficial interest totalling 100 units. Initially, Dr. Vnuk received all 100 units. Eventually, however, the units of beneficial interest were reissued so that Dr. Vnuk, his wife, and three children received 18 units each, and 10 units were allotted to the Wallace J. Vnuk Research & Educational Trust, later known as the Wallfran Research and Educational Fund (hereinafter referred to as Wallfran). Wallfran was administered by the trustees of the Trust and its purpose included educational loans to future trustees or managers of the Trust.[3]

Shortly after creating the Trust, Dr. Vnuk executed a document purporting to convey certain real property, personal property, investment interests, and insurance policies to the Trust. At the same time, he executed an affidavit stating, "I hereby convey to this trust . . . the exclusive use of my lifetime services and all the currently earned remuneration accruing therefrom." Similarly, the doctor's wife conveyed all her real and personal property as well as earned remuneration from her lifetime services to the Trust.

In September, 1972 the Vnuk Trust entered into a partnership with Dr. William H. Northwall known as Kearney Radiology Associates (KRA). KRA was formed to provide radiological services to various area

1. The Commissioner found income tax deficiencies for the tax years 1972–74 in the amounts of $12,373.90 in 1972, $32,152.76 in 1973, and $29,467.52 in 1974. The Commissioner assessed negligence penalties pursuant to 26 U.S.C. § 6653(a) for each of these years in the amounts of $618.69 in 1972, $1,607.62 in 1973, and $1,473.37 in 1974.

2. References herein to "taxpayer" refer to Wallace J. Vnuk.

3. In 1974 Wallfran filed an application for Recognition of Exemption Under Section 501(c)(3), 26 U.S.C. § 501(c)(3), but the application was denied.

hospitals. Payments from the hospitals were made to KRA and KRA profits were then distributed. The Trust received 65% of the profits and Dr. Northwall received the remaining 35%. The partnership continued in existence until August, 1973, after which time the hospitals made payments directly either to the Trust or to Dr. Northwall.[4]

In general the Trust corpus was used for family expenses such as housing, health care, educational expenses, food, clothing and vacations. The trustees, however, also contributed $5,100.00 in 1972 and $25,566.00 in 1973 to Wallfran. The educational trust, in turn, made contributions totalling $8,000.00 to the Saint Luke's Episcopal Church in Kearney, Nebraska (Episcopal Church).

After reviewing petitioners' tax returns for the years 1972–74, the Internal Revenue Service notified petitioners that they had substantial unreported income for the years in question, and had wrongfully taken certain deductions. The Commissioner assessed the appropriate tax deficiencies as well as negligence penalties under 26 U.S.C. § 6653(a). Petitioners then filed suit in the United States Tax Court challenging the Commissioner's determinations. The Tax Court, however, upheld the Commissioner's findings holding that: (1) the taxpayers' conveyance of lifetime services to the Trust did not shift the tax burden to the Trust; (2) the taxpayers were not entitled to deduct contributions to Wallfran; and (3) the taxpayers were properly assessed negligence penalties pursuant to 26 U.S.C. § 6653(a).

On appeal petitioners first argue that the Tax Court erred in concluding that the conveyance of lifetime services to the Trust was ineffective to shift the incidence of taxation. Petitioners contend that where, as here, an individual performs services as

an agent or "leased employee" of a trust, it is the trust, rather than the individual, that is taxed on the income accruing from the services. *Cf. Rubin v. Commissioner,* 429 F.2d 650 (2d Cir. 1970); *Fox v. Commissioner,* 37 B.T.A. 271 (1938); *Laughton v. Commissioner,* 40 B.T.A. 101 (1938), *rev'd on other grounds,* 113 F.2d 103 (9th Cir. 1940). This argument has no merit.

■ It is established in the field of tax law that income is taxed to the person who earns it. *Commissioner v. Culbertson,* 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–1213, 93 L.Ed. 1659 (1949). Attempting to avoid taxation through deflecting income away from the true earner to another entity does not, in and of itself, shift the incidence of taxation. *Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). *See also United States v. Basye,* 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973). As the Tax Court has noted:

> The choice of the proper taxpayer revolves around the question of which person or entity in fact controls the earning of the income rather than the question of who ultimately receives the income.

*Vercio v. Hailey,* 73 T.C. 99 (1980).

■ Where the taxpayer simply assigns his lifetime services and income earned from the performance of those services, and the taxpayer rather than the trust has the "ultimate direction and control over the earning of the compensation," the conveyance is ineffective to shift the tax burden from the taxpayer to the trust. *Wesenberg v. Commissioner,* 69 T.C. 1005, 1010–11 (1978).

■ Here, it is clear that the "ultimate direction and control" rested in the taxpayer and not in the Trust. While the taxpayer may have conveyed, at least in form, his services to the Trust, he was not in substance a bona fide servant of the Trust.

---

4. The Trust received income from sources other than compensation from KRA. In 1972 the Trust received $575.00 in interest income from a savings account which the taxpayer conveyed to the Trust, $648.00 from a partnership known as the Fountain Gardens A & B Ltd., which the taxpayer had transferred to the Trust, and $4,782.71 from taxpayer's professional fees from other sources. In 1973 the Trust received $650.00 in interest income from the savings account and $40,169.16 in professional fees from other sources. In 1974 the Trust received $99,406.69 in professional fees.

The Trust had no right to supervise the taxpayer's employment or determine his remuneration, and the taxpayer had no legal duty to earn money or perform services for the Trust.[5] In such circumstances, the conveyance merely constituted an anticipatory assignment of income and was insufficient to shift the incidence of taxation from the petitioners to the Trust.

We further note that the income was taxable to petitioners by reason of the "grantor trust" provisions set out in sections 671 through 677 of the Code, 26 U.S.C. §§ 671–77. Under these provisions a grantor of a trust who has retained certain powers which may be exercised without the approval or consent of an adverse party is treated as the owner of the trust and taxed individually. In finding the Vnuk Trust grantor taxable the Tax Court observed:

> In *Wesenberg* we held that the taxpayer retained total control over the trust and that the taxpayer should, under the grantor trust rules, be treated as the owner of the trust for tax purposes. With respect to this issue, the facts in this case are virtually identical to the facts in *Wesenberg*. Several factors indicate that petitioner retained total control over the Trust. First, none of petitioner's powers as trustee required the consent of an "adverse party." Second, petitioner had beneficial enjoyment of the Trust corpus and income. Third, petitioner used the Trust for his own benefit (footnote omitted). Finally, the assets of the Trust could revert to petitioner at any time.

After careful review, we find the Tax Court's conclusion is amply supported by the record and agree that the taxpayer was taxable on the income conveyed to the Trust under the "grantor trust" provisions.

Petitioners next argue that their claim of charitable deductions for contributions by Wallfran to the Episcopal Church should have been allowed.[6] We observe, however, that this issue was not raised in the Tax Court. Although the Tax Court did consider the alleged grants by Wallfran to the Episcopal Church in determining whether Wallfran was in fact a charitable organization under § 501(c)(3), the Tax Court did not consider, nor was it asked to consider, the issue of the deductibility of contributions by Wallfran. Because this issue was not raised in the Tax Court we cannot consider it. *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Johnson v. United States*, 434 F.2d 340 (8th Cir. 1970).

The petitioners finally argue that the Tax Court erred in assessing the 5% penalties under § 6653(a) for underpayment of tax due to negligence or intentional disregard of the rules and regulations of the Internal Revenue Code.

We do not agree. We note that the assessment of a negligence penalty is presumptively correct and that the taxpayer bears the burden of establishing the penalty was erroneous. *Cleveland Chiropractic College v. Commissioner*, 312 F.2d 203, 207 (8th Cir. 1963). In reviewing the record, we find strong support for the proposition that the petitioners at a minimum should have been assessed the 5% penalties.

The decision of the Tax Court is affirmed.

---

5. Because of these factors, the present case is readily distinguishable from the so-called "employee lend-out" cases where the courts have held a corporation rather than the employee is taxable. In those cases the employee was legally obligated to provide services to the corporation and the corporation had the right to direct the employee's activities and to control the amount of income the employee received for those activities. *See, e. g., Rubin v. Commissioner, supra; Fox v. Commissioner, supra; Laughton v. Commissioner, supra.*

6. Petitioners concede that they failed to establish at trial that Wallfran was a charitable organization within the meaning of the statute. Thus, it is clear that the Tax Court properly disallowed the Trust's contributions to Wallfran.