WILLIAM E. GRAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; SHIRLEY M. GRAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gran v. Commissioner
Docket Nos. 9794-79, 9934-79.
United States Tax Court
T.C. Memo 1980-558; 1980 Tax Ct. Memo LEXIS 29; 41 T.C.M. (CCH) 564; T.C.M. (RIA) 80558; December 16, 1980
Raymond A. Harrill, for the petitioners. Deborah A. Butler, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: In these consolidated cases respondent determined the following deficiencies in petitioners' Federal income *31 taxes: Petitioner
Dkt. No.
Year
Amount
William E. Gran
9794-79
1977
$ 2,682.72
Shirley M. Gran
9934-79
1977
2,043.61
Petitioners have agreed that, if the Court holds that the William E. Gran Family Equity Pure Trust should not be recognized for Federal tax purposes, the determinations of the amounts set forth in the respective notices of deficiencies are correct. The issues for decision are: (1) whether the petitioners are taxable on wages earned as employees of the University of Arkansas at Little Rock and the St. Vincent Infirmary, respectively, which wages were transferred to a "family trust" to which they had conveyed certain real and personal property and their lifetime services; and (2) whether $ 3,369 paid in 1977 for materials used by the petitioners in creating the "family trust" is deductible by them under section 212. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners William E. *32 Gran (hereinafter William) and Shirley M. Gran (hereinafter Shirley) were legal residents of Little Rock, Arkansas, when they filed their respective petitions in these cases. They filed separate Federal income tax returns on Form 1040 for the year 1977 with the Internal Revenue Service Center at Austin, Texas. During 1977 William was an instructor performing services in the Physics Department at the University of Arkansas at Little Rock, and Shirley was a registered nurse performing services at the St. Vincent Infirmary in Little Rock. Their respective remuneration, duties and work schedules were determined by their employers. On January 17, 1977, a document entitled "Declaration of Trust of This Pure Trust" was signed by William E. Gran, Shirley M. Gran and Preston W. Massengill, a friend. William E. Gran signed as Grantor-Creator, and Shirley M. Gran and Preston W. Massengill signed as Trustees. By this declaration, William E. Gran purported to create what is entitled the "William E. Gran Family Equity Pure Trust" (hereinafter referred to as the Trust). The Declaration of Trust provides, in pertinent part, as follows: Powers of Trustees Trustees may do anything any *33 individual may legally do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of THIS TRUST, such as, viz: buy, sell or lease land for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks, or copyrights; buy, sell or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses or other trading establishments or places of business of any kind; construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging The Trust property for the payment thereof; hypothecate assets, property, or both, of The Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous. A Minute of Resolutions of The Board of Trustees authorizing *34 what it is they determine to do or have done shall be evidence that such an act is within their power. Anyone lending or paying money to The Trustees shall not be obliged to see the application thereof; all funds paid into the treasury are and become a part of the CORPUS of THIS TRUST. Administration The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by their resolutions (said resolution to be ratified ALWAYS by a MAJORITY of the Trustees then in office and participating in the issuing meeting) covering contingencies as they arise and are recorded in the minutes of their meetings, which are the by-laws, rules and regulations of THIS TRUST. Officers and Management The Trustees may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. Any Trustee may hold two, or more, offices simultaneously, their duties being such as are usual or are prescribed. They may employ agents, executives, or other employees, or designate third persons to hold funds for specific purposes. Construction The Trustees, officers, agents or employees *35 possess only such authority as awarded them herein. Authority is understood and meant to be similar to that awarded an executor of an estate wherein the testator directs (illustration): "that my Executor is directed to handle the estate in the manner he thinks to be to the best interest, limited by the terms hereof, without the necessity of resort to the court for permission or approval of any transaction, intending herein to leave open for the court the question of conscientious dealing of my Executor only." Trustees' Declaration of Purpose of this Express Equity Pure Trust THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that William E. Gran can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote *36 the general welfare, all of which William E. Gran feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. CLOSURE This trust is irrevocable and may not be altered or amended in any respect unless specifically authorized by this instrument, and it may not be terminated except through distributions permitted by this instrument. Certificates Of Beneficial Interest The Beneficial Interests, as a convenience, for distribution are divided into One Hundred (100) Units, substantially in the certificate form hereto attached. They are non-assessable, non-taxable (under the provisions of Section 1002 of Internal Revenue Code), non-negotiable but transferable; and the lawful possessor thereof shall be construed the true and lawful owner thereof. The lawful owner may, if he so desires, cause his Beneficial Certificate to be registered with the Secretary of the Trustees. Duration-Closure This Trust shall continue for a period of twenty-five years from date, unless The Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient *37 reason necessary to protect or conserve trust assets, liquidate the assets, distribute and close The Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. In the event this instrument has been recorded with the Register of Deeds, they shall then file with said Recorder a notice that The Trust shall terminate and cease; and thereupon, The Trustees shall automatically be discharged hereunder, PROVIDED, their administration and distribution have been made in accordance with the terms and provisions of THIS TRUST Indenture. Otherwise, a court of equity may be invoked to review and correct any tort or error. Purport The purport of this instrument is to convey property to Trustees, to constitute a Trust (Estate) for the benefit of the beneficiaries, held by the Trustees, in Trust and in joint tenancy for the duration hereof, and to provide for a prudent and economical administration by natural persons acting in a fiduciary capacity, to BEGIN AT ONCE and not to be deferred until after the death of any creator, settlor or maker, as occurs when such Trust Estates are created by Last Will and Testament, *38 the settlors, creators or makers of this covenant preferring that The Trustees act solely within their constitutional rights as based upon their common law rights and immunities vouchsafed to citizens of the United States of America and defined in Article IV, Section 2, PROVIDING, that "Citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and Article VI, Section 2, PROVIDING, that "The Constitution of the United States and the laws made in pursuance thereof shall be the supreme law of the land;" and the 14th Amendment thereof, PROVIDING, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The administration of THIS TRUST shall be amenable to judicial regulation on occasion arising and under the paternalism and protection of the court. Citations applicable and various rulings pertaining to Trust Estates and constitutional rights of contract and collective bargaining (except copartnership relationship, which is not applicable) may be found in case law which is applicable. Nothing herein contained shall be construed as an intent to evade or contravene *39 any Federal or State Law, nor to delegate to Trustees and special power belonging exclusively to franchise of incorporation. The intent of the Creator of THIS TRUST is to Grant to it certain real and personal properties and in so doing conveys all right, title and interest therein. By creating this Legal Entity, The Grantor-Creator of THIS TRUST has exercised his Constitutional Rights. On January 20, 1977, William and Shirley each entered into an "Agreement" whereby they purported to convey to the Trust the "ownership" of their services. The agreement also provided that the Trust could contract for the "vending" of their services to a third party and thus each would become "a leased employee" of the third party employer. In consideration of the conveyance of their services the Trust agreed to provide them with: A. Payment of all medical, dental, other health care expreses and adequate insurance to cover the cost of health care incurred by Second Party/or his dependents. B. Payment of all educational expenses of Second Party and/or dependents. C. Payment of all transportation expenses of Second Party while Second Party conducts business on behalf of First Party. *40 D. Reimbursement for any and all expenses incurred by Second Party while managing, protecting and enhancing assets owned by First Party. E. First Party, for its convenience, maintains a trust headquarters and hereby requires Second Party to occupy same and Second Party hereby agrees to do so as an express condition of this Agreement. The agreement further provides: 10. Because of continuing and ongoing consideration from First Party to Second Party as described hereinabove (Paragraph 9), and to more clearly evidence intentions of all parties to this Agreement, First Party hereby requires Second Party to perform continuing and ongoing services for Third Party (ies). 11. In the event Third Party refuses to enter into a contract with First Party to lawfully acquire the use of the services of Second Party, this provision expressly authorizes and hereby requires Second Party to be an agent of First Party, and, individually, but as an agent of First Party, to enter into a contract with said Third Party to perform services for same. 12. Remuneration by Third Party for services described in Paragraph 11 will be received in the name of Second Party, but as an agent or nominee *41 of First Party and, thus, not legally owned by Second Party.
13. Pursuant to the provisions of Paragraphs 10 and 11 above, Second Party is hereby required and expressly directed to receive remuneration for services performed as an agent or nominee of First Party to be delivered to First Party at the direction of First Party. 14. Furthermore, the duties of Second Party directly on behalf of First Party shall be to: A. Manage the business affairs of First Party being guided by the Board of Trustees and Minutes of First Party; and B. Provide for any and all contingencies as required by the Board of Trustees of First Party; and C. Maintain the real and personal properties of First Party in good repair. During the year 1977 the following persons served as trustees of the Trust: (1) Shirley M. Gran from January 17, 1977 through December 31, 1977; (2) Preston Massengill from January 17, 1977 through March, 1977; and (3) William E. Gran from January 20, 1977 through December 31, 1977. Documents entitled "Units of Beneficial Interest" were issued. These documents provided, in part, that each certificate of beneficial interest "conveys no interest of any kind in The Trust *42 assets, management or control thereof." Initially William received all 100 units. Subsequently he conveyed 50 units to his wife, Shirley, and on or about January 28, 1977 he transferred 15 units to each of his three children and retained 5 units for himself. No contracts or other agreements exist between the Trust and the University of Arkansas at Little Rock regarding the performances of services by the Trust for the University. The University of Arkansas at Little Rock did not pay income to the Trust for the performances of services by William for the year 1977. No contracts or other agreements exist between the Trust and the St. Vincent Infirmary regarding the performances of services by the Trust for the St. Vincent Infirmary. It declined to enter into a contract or other agreement with the Trust regarding the payment of income earned by Shirley for the year 1977. St. Vincent Infirmary did not pay income to the Trust for the performance of services by Shirley for the year 1977. During the year 1977, William received income for his services in the amount of $ 16,985 from the University of Arkansas at Little Rock as evidenced by Form W-2 (wage and Tax Statement 1977) *43 and Shirley received income for her services in the amount of $ 13,352.31 from the St. Vincent Infirmary as evidenced by Form W-2 (Wage and Tax Statement 1977). The petitioners' respective remuneration, employment duties and work schedules were determined in the same manner after the creation of the Trust as before its creation. No written agreement existed between the Trust and the petitioners' respective employers regarding the performances of their services. William and Shirley purportedly conveyed all of their real and personal property to the Trust. The Trust paid for the maintenance of petitioners' personal residence and for their personal living expenses during 1977. The amounts of the "consultant fees" paid by the Trust to the petitioners were determined by them. Decisions concerning the Trust were made by them. The Declaration of Trust provides that upon its termination the Trust assets are to be distributed pro rata to the beneficiaries thereof. The administration of the Trust with respect to distributions of annual income is not limited in any manner. William, the grantor, may transfer the units of beneficial interest. The trustees can, by unanimous vote, *44 terminate the Trust. On April 28, 1978, the Trust filed with the Internal Revenue Service Center at Austin, Texas, a U.S. Fiduciary Income Tax Return (Form 1041) for 1977, which was signed by William E. Gran, Trustee. Petitioners paid $ 3,369 in 1977 to Educational Scientific Publishers for the purchase of materials to create the Trust. Such amount was claimed as a miscellaneous deduction on the 1977 Federal income tax return of William E. Gran with this explanation: "Estate planning materials to maintain and conserve assets." Respondent disallowed the claimed deduction on the ground that it is a personal expense. In the notices of deficiencies sent to the petitioners, respondent determined that claimed deductions of $ 16,022 and $ 12,693.50 were not allowable because they were anticipatory assignments of income attributable to the services performed by the petitioners, and thus taxable to them. In addition, respondent determined that the Trust was a grantor trust governed by sections 671 through 677, and that the income, deductions and credits against the tax, which were reported by the Trust, are includable in conputing petitioners' income for 1977. OPINION The first *45 issue is whether the purported conveyance by petitioners of their property and lifetime services to the Trust was effective to shift the incidence of taxation on their compensation which was received by them and paid over to the Trust. Petitioners contend that they conveyed the "ownership", rather than the mere "use", of their labor services to the Trust, which, in turn, was entitled to vend those services to third parties, thereby shifting to the Trust the liability for Federal income taxes due on the monies paid for the services performed by the petitioners. They argue that they performed the services as agents, employees or "leased" employees of the Trust, and that it is the Trust, rather than themselves, which should be taxed on the income received from the services. To the contrary, respondent argues that the creation of the Trust, the attempted anticipatory assignment to the Trust and the deductions by the Trust of the petitioners' personal expenditures, constitute an ineffective assignment of income which should not be recognized for Federal income tax purposes, thereby making the petitioners taxable on all the income earned by them from their respective employers. Alternatively, *46 respondent asserts that the income resulting from the purported conveyance of petitioners' lifetime services and earned remuneration is taxable to petitioners, pursuant to the grantor trust provisions of sections 671 through 677, because they had powers exercisable without the approval or consent of an adverse party and they retained dominion and control over all of the property purportedly conveyed to the Trust. We agree with the respondent. The Supreme Court has described as the "first principle of income taxation" the maxim that income must be taxed to the one who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949). Notwithstanding their validity under state law, contractual arrangements that are designed to deflect income away from the one who earns it are not recognized as determinative for Federal income tax purposes. Lucas v. Earl, 281 U.S. 111 (1930). In this respect it matters not whether the ultimate recipient of the diverted income is an individual or, as here, an entity such as a trust. United States v. Basye, 410 U.S. 441, 449 (1973). Moreover, the person or entity that controls the earning of the *47 income, not necessarily the one who ultimately receives it, is properly taxable thereon. American Savings Bank v. Commissioner, 56 T.C. 828, 838-839 (1971); Wesenberg v. Commissioner, 69 T.C. 1005 (1978). In a long list of cases this Court has held that so-called "family trust" arrangements are not effective to deflect taxpayers' earnings from themselves to trusts. See, e.g., Vercio v. Commissioner, 73 T.C. 1246 (1980); Markosian v. Commissioner, 73 T.C. 1235 (1980); Wesenberg v. Commissioner, supra; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir., June 7, 1978), cert. denied 440 U.S. 959 (1979); Vnuk v. Commissioner, T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980). [2]We reach the same conclusion here. We think the petitioners' categorization of the conveyance as one of "ownership" of services rather than "mere use" of such services for the benefit of the Trust lacks merit. The facts *48 of these cases show that the Trust had no right to control the amount of income earned by the petitioners or the manner in which it was earned. Instead, the evidence establishes that the petitioners' respective remuneration, employment duties and work schedules were determined in the same manner after the creation of the Trust as before its creation. No written agreement and no oral agreement existed between the Trust and the petitioners' respective employers regarding the performance of services by the petitioners. Their respective employers, the University of Arkansas at Little Rock and the St. Vincent Infirmary, did not pay income to the Trust for the performance of services by William or Shirley for the year 1977. The St. Vincent Infirmary and the University of Arkansas at Little Rock declined to enter into a contract or other agreement with the Trust regarding the payment of income earned by the Trust to William or Shirley. The evidence also establishes that the "ultimate direction and control" of the petitioners' employment duties rested with their respective employers and not with the Trust. While it may be argued that the petitioners conveyed, at least in form, their *49 services to the Trust, they were not, in substance, bona fide servants of the Trust. The Trust had no right to supervise their employment or to determine their remuneration, and the petitioners had no legal duty to earn money or perform services for the Trust. Under such circumstances we view the conveyance as merely constituting an anticipatory assignment of income that was insufficient to shift the incidence of taxation from the petitioners to the Trust. Vnuk v. Commissioner, 621 F.2d at 1320-1321. We reject the petitioners' argument that they were agents or "leased" employees of the Trust.In Vnuk v. Commissioner, supra at 1320, the Court of Appeals said: On appeal petitioners first argue that the Tax Court erred in concluding that the conveyance of lifetime services to the Trust was ineffective to shift the incidence of taxation. Petitioners contend that where, as here, an individual performs services as an agent or "leased employee" of a trust, it is the trust, rather than the individual, that is taxed on the income accruing from the services. Cf. Rubin v. Commissioner, 429 F.2d 650 (2d Cir. 1970); Fox v. Commissioner, 37 B.T.A. 271 (1938); *50 Laughton v. Commissioner, 40 B.T.A. 101 (1938), rev'd on other grounds, 113 F.2d 103 (9th Cir. 1940). This argument has no merit.
And in footnote 5, page 1321, of the Vnuk opinion, the Eighth Circuit commented: Because of these factors, the present case is readily distinguishable from the so-called "employee lend-out" cases where the courts have held a corporation rather than the employee is taxable. In those cases the employee was legally obligated to provide services to the corporation and the corporation had the right to direct the employee's activities and to control the amount of income the employee received for those activities. See, e.g., Rubin v. Commissioner, supra; Fox v. Commissioner, supra; Laughton v. Commissioner, supra.
Accordingly, we hold that the amounts received by the petitioners from the University of Arkansas at Little Rock and the St. Vincent Infirmary for their services are includable in their income and should have been so reported. In view of this holding that the assignment of income doctrine controls the disposition of these cases, it is unnecessary for *51 us to discuss respondent's alternative position that the grantor provisions of sections 671 through 677 are applicable. [3]
The second issue is whether the $ 3,369 paid in 1977 for the materials utilized to establish the "family trust" is properly deductible by the petitioners under section 212(2). The materials consist of various forms and instructions to be used in creating a pure equity trust.Petitioners contend that the amount is deductible as an expense under section 212(2) for the management, conservation or maintenance of property held for the production of income. Respondent, on the other hand, contends that the amount constitutes a nondeductible personal expenditure. We agree with the respondent. Petitioners argue that the 19 acres of land they conveyed to the Trust were intended to be developed into a mobile home park and they thought the Trust would be a proper vehicle for such development. The evidence shows that the property was purchased years *52 before the creation of the Trust and that the petitioners had no real plans for the production of income with respect to it. None of the property transferred to the Trust produced, or was intended to produce, income taxable to the petitioners. Consequently, it cannot be successfully maintained that the amount was paid for the management, conservation or maintenance of income producing property. We think the purchase of the trust materials was motivated solely by personal reasons. Previously such expenditures have been treated as nondeductible personal expenses for which a deduction is prohibited by section 262. See Johnston v. Commissioner, T.C. Memo. 1978-121; Morgan v. Commissioner, T.C. Memo. 1978-401; cf. Mathews v. Commissioner, 61 T.C. 12, 27 (1973), revd. on other grounds 520 F.2d 323 (5th Cir. 1975); Merians v. Commissioner, 60 T.C. 187 (1973); Cobb v. Commissioner, 10 T.C. 380 (1948), affd. 173 F.2d 711 (6th Cir. 1949). [4] Therefore, we sustain respondent on this issue. *53 Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1977, unless otherwise indicated.↩
2. An appeal in the present cases would be to the Court of Appeals for the Eighth Circuit.↩
3. We note, however, that the United States Court of Appeals for the Eighth Circuit found the "grantor trust" provisions applicable under similar circumstances in its Vnuk opinion (621 F.2d at 1321↩).
4. It is unfortunate for petitioners--indeed an injustice to all citizens who assume their fair share of the tax burdens--to have persons or corporations promoting tax avoidance gimmicks of any kind which lack legal or economic substance. Perhaps more serious consideration should be given to enforcement action to prevent trafficking in such schemes.↩