CHARLES J. GERLACH FAMILY ESTATE, A TRUST, BEATRICE C. GERLACH, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CHARLES J. GERLACH and BEATRICE C. GERLACH,Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gerlach Family Estate v. Commissioner
Docket Nos. 1903-78, 1959-78.[1]
United States Tax Court
T.C. Memo 1981-71; 1981 Tax Ct. Memo LEXIS 679; 41 T.C.M. (CCH) 919; T.C.M. (RIA) 81071; February 19, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provision of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: In these consolidated cases, respondent determined *681 the following deficiencies in petitioners' Federalincome tax: Taxable
Year
Deficiency
Charles J. Gerlach
Family Estate,
1974
$ 3,737.64
A Trust, Beatrice
C. Gerlach,
Trustee (Docket
No. 1903-78)
Charles J. Gerlach
and Beatrice C.
1974
7,529.67
Gerlach (Docket
No. 1959-78)
Concessions having been made, the issues for decision are (1) whether petitioners Charles J. and Beatrice C. Gerlach or a trust are taxable on certain income earned during the year which was assigned to the trust; and (2) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Charles J. and Beatrice C. Gerlach, the Petitioners in docket number 1959-78, resided in Elkhorn, Wisconsin, at the time of filing their petition herein. Petitioners timely filed a joint Federal income tax return for the taxable year 1974 with the Internal Revenue Service Center, Kansas City, Missouri. petitioner The Charles J.Gerlach Family Estate, A Trust, Beatrice C. Gerlach, Trustee, the petitioner *682 in docket number 1903-78, had its principal office in Elkhorn, Wisconsin, at the time of filing its petition herein. The trust timely filed its Federal income tax return for the taxable year 1974 with the Internal RevenueService Center, Kansas City, Missouri. On January 2, 1974, petitioner Charles J. Gerlach (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Pure Trust." The document was executed by petitioner for the purpose of creating a trust known as The Charles J. Gerlach Family Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Charles J. Gerlach can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his business through his desire to promote the general welfare * * *." Petitioner's *683 wife Beatrice C. Gerlach (hereinafter Beatrice) and their son Jay C. Gerlach (hereinafter Jay) were the initial trustees of the Trust. On the same day that petitioner executed the Declaration of Trust he became a trustee, and throughout the remainder of 1974 Beatrice,Jay, and petitioner were the trustees of the Trust. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner and his wife executed several other documents on January 2, 1974, for the purpose of conveying their real and personal property to the Trust. [3] The real property, including petitioner's home, was jointly owned by petitioner and his wife prior to the conveyance to the Trust. Beatrice transferred her interest to petitioner, who then transferred the property into the Trust. Petitioner also transferred all of the household items into the Trust. *684 In exchange for the real and personal property, and the exclusive use of petitioner's lifetime services, the Trust issued all 100 units of beneficial interest to petitioner. On January 2, 1974, pursuant to a meeting of the Board of Trustees the units of beneficial interest were redistributed as follows: Petitioner
5 units
Beatrice
50 units
Jay
9 units
James Gerlach (son)
9 units
Gerard Gerlach (son)
9 units
Joy Gerlach (daughter)
9 units
Jan Gerlach (daughter)
9 units
The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of he property of the Trust * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither The Trustees, officers, or *685 certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust * * *." The rights of the owners of the beneficial interest are also set forth in the Certificate of Beneficial Interest, which certificates provide that the benefits "hereby conveyed consist solely of the emoluments as distributed by the action of the Trustees and nothing more." The trustees were authorized, by the Declaration of Trust, "to do anything any individual may legally do in any state or country." Further, "Resolutions of the Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power." The trustees were specifically empowered to "pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the Board of Trustees." Petitioner was a sales representative for Elkhorn Chemical Company (hereinafter Company) prior to and during the year 1974, selling various chemical products to the Company's customers on a commission basis. The Company's sales manager determined the territory that petitioner would cover as a sale representative, and the Company's *686 president set the commission petitioner would receive. During January, 1974, petitioner requested the Company to make all of his future checks payable to the Trust. For a short period of time during 1974, the Company followed petitioner's request and made the commission checks payable to the Trust. Thereafter, on the advice of its accountant, the Company refused to pay the Trust and all future checks were made payable to petitioner who deposited the checks into the Trust's bank account. Although petitioner attempted to consummate an employment agreement between the Trust and the Company for petitioner's services, the agreement was never executed by the parties. During the year 1974, the Trust paid for the maintenance of the petitioner's personal residence, including all of the utilities and anew roof. [4] In addition, the Trust made distributions to petitioner as a "consulting fee" based on the personal needs of himself and his family, and not on the services he performed. Petitioner and his wife determined what expenses should be paid out of the Trust's account. Although Jay was also a trustee he exercised no control over any disbursement from the Trust. Also, no distributions *687 were over made to the beneficiaries of the Trust. On its 1974 Federal income tax return the Trust reported $ 32,664.31 as commission income petitioner earned from the Company. The Trust deducted business expenses in the amount of $ 16,815.52 incurred by petitioner in connection with his job as a sales representative. In addition the Trust deducted $ 9,294.15 as "administrative" expenses. These administrative expenses consisted of petitioner's personal, living, and family expenses and "consulting fees" paid by the Trust to petitioner. Petitioner reported $1,623.68 of income from wages, "consulting fees" of $ 3,600received from the Trust, and other miscellaneous income on his 1974 Federal income tax return. Respondent contends that all of the income and expense items reported by the Trust are income and expenses of petitioner, not the Trust. In the alternative, respondent contends that if the income and xpenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. OPINION The first issue *688 is whether the purported conveyance by petitioners of their property and lifetime services to the Trust was effective to shift the incidence of taxation on the compensation received during the year from petitioner to the Trust. Petitioners contend that a valid trust was created and the assignment by petitioner of his rights as a sales representative for Elkhorn Chemical Company was sufficient to shift the incidence of taxation from himself to the Trust.Petitioners further argue that the real question involved herein is the right to contract under the United States Constitution and not whether there was an assignment of income from petitioner to the Trust. As a result of the assignment, petitioner argues that he performed service as an agent for the Trust in that his services were subcontracted to Elkhorn Chemical Company. Respondent disagrees with petitioner's position and maintains that the Trust lacks economic reality, that the compensation received by the Trust was an anticipatory assignment of income ineffective to treat the compensation as that of the Trust, that any income earned by the Trust is taxable to petitioner under the grantor trust provisions set forth in sections *689 671 through 677, finally, to the extent the Trust was a viable trust with earned income, the Trust is an association taxable as a corporation under section 7701. We agree with respondent that the income from the Elkhorn Chemical Company is taxable to petitioner. We need not respond to various positions set forth by the parties since under the facts of this case it is clear that the income was earned by petitioner. The SupremeCourt has described as the "first principle of income taxation" the maxim that income must be taxed to the one who earns it. Commissioner v. Culberston,337 U.S. 733, 739-740(1949). We agree that petitioner has a constitutional right to enter into contractual arrangements, but he may not en ter into such arrangements that are designed simply to alter the Federal income tax consequences of income between various entitles without regard to the true earner of such income. Lucas v. Earl,281 U.S. 111 (1930). It is the person or entity that controls the earning of the income, and not the one who ultimately receives it, that must pay *690 the income tax thereon. American Savings Bank v. Commissioner, 56T.C. 828, 838-839 (1971); Wesenberg v. Commissioner, 69T.C. 1005 (1978). As we said in American Savings Bank v. Commissioner,supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. Here petitioner conveyed all of the income to be earned from the Elkhorn Chemical Company to the Trust. It is clear that the Company looked to petitioner to perform the necessary services and not to the Trust. This is clear from the fact that the company followed petitioner's request for a short period of time to pay his commissions directly to the Trust. However, on the advice of the Company's accountant, the Company unilaterally began paying petitioner directly, and he in turn deposited his commission checks in the Trust checking account. Petitioner's own testimony makes it clear that he controlled the earnings. During the trial petitioner was asked what changes took place with his sales operation after the Trust was created and he responded "Well, nothing changed as far as Elkhorn Chemical is concerned, except the fact that they made the check out to the *691 trust for a while * * *." Regardless of whether the income was paid to the Trust or directly to petitioner, the conveyance to the Trust by petitioner is a classic case of a taxpayer attempting to shift the incidence of taxation on his earned income to another entity. In applying the Supreme Court's rule that income is taxed to the one who earns it, the crucial point to consider is not the timing of the assignment, but the earning of the income. Therefore, the fact that the assignment predates the earning of the income is of no help to petitioner's cause in this case. In a long list of cases, factually similar to what we have here, we have held such arrangements were not effective to shift the incidence of taxation from the taxpayer to the Trust. See Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980); affg. T.C. Memo. 1979-164; Horvat v. Commissioner,T.C. Memo. 1977-104, *692 affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner,T.C. Memo. 1980-313; and Gran v. Commissioner,T.C. Memo. 1980-558. There is no merit to petitioner's argument that he was an agent or subcontractor of the Trust. In Vnuk v. Commissioner,supraat 1320, the Court of Appeals said: On appeal petitioners first argue that the Tax Court erred in concluding that the conveyance of lifetime services to the Trust was ineffective to shift the incidence of taxation. Petitioners contend that where, as here, an individual performs services as an agent or "leased employee" of a trust, it is the trust, rather than the individual, that is taxed on the income accruing from the services. Cf. Rubin v. Cvommissioner, 429 F.2d650 (2d Cir. 1970); Fox v. Commissioner,37 B.T.A. 271 (1938); Laughton v. Commissioner,40 B.T.A. 101 (1938), rev'd on other grounds, 113 F.2d 103 (9th Cir. 1940). This argument has no merit. And in footnote 5, page 1321, of the Vnuk opinion, the Eighth Circuit commented: Becauseof these *693 factors, the present case is readily distinguishable from the so-called "employee lend-out" cases where the courts have held a corporation rather than the employee is taxable. In those cases the employee was legally obligated to provide services to the corporation and the corporation had the right to direct the employee's activities and to control the amount of income the employee received for those activities. See, e.g., Rubin v. Commissioner,supra; Fox v. Commissioner,supra;Laughton v. Commissioner,supra.
In addition, based on the record of this case, petitioner's employment arrangement with the Trust lacked economic reality. It is inconceivable that under any form of an arms length agreement that petitioner would assign his services to the Trust without a specific understanding as to the amount of remuneration he would receive in return. It is obvious that petitioner would not have agreed to such an arrangement unless he was in actual and complete control of the Trust. We can no valid purpose for the Trust other than tax avoidance. Under these circumstances the Trust has no economic reality, which, in turn, mandates *694 that we disregard any attempt to shift income to a mere paper entity. See Markosian v. Commissioner,supra.
Accordingly, we hold that the income received from Elkhorn Chemical Company is includible in petitioner's income. Since we have upheld respondent's determination that all of the income and expense items reported by the Trust should have been reported by petitioner, it is unnecessary to decide respondent's alternative arguments under the grantor trust rules and whether the Trust is an association taxable as a corporation. Decisions will be entered under Rule 155.
Footnotes
1. These cases were consolidated for the purposes of trial, briefing, and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. The record contains no evidence that petitioner executed a conveyance agreement transferring the exclusive use of his lifetime services and all remuneration earned therefrom to the Trust, but for the sake of argument it will be assumed petitioner executed this agreement along with all the others.↩
4. The Trust also paid other personal expenses of petitioner, such as the cost of his children's education.↩