CALVIN L. BAUMGARTNER and MARCELLA M. BAUMGARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baumgartner v. Commissioner
Docket No. 3984-77.
United States Tax Court
T.C. Memo 1981-77; 1981 Tax Ct. Memo LEXIS 670; 41 T.C.M. (CCH) 944; T.C.M. (RIA) 81077; February 23, 1981. Joseph Weigel, for petitioners. Wayne B. Henry, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies in petitioners' 1973 and 1974 Federal income tax in the amounts of $548.33 and $ 1,123.67, respectively. The only issue for decision is whether certain wages and other miscellaneous income earned during the years which *672 were assigned to a family trust are taxable to petitioner. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners resided in the State of Wisconsin when they filed their petition herein. Petitioners filed a timely joint income tax return for each of the years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. During each of the years involved, petitioner Calvin L. Baumgartner (hereinafter Calvin) was employed by Sub Zero Freezer Co. Inc., Madison, Wisconsin (Sub Zero). Petitioner performed his duties as an employee pursuant to a collective bargaining agreement between his union and his employer. Petitioner Marcella M. Baumgartner (hereinafter Marcella) also performed services as an employee. On July 9, 1973, Calvin executed a document entitled "Declaration of Trust of This Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as the Calvin L. Baumgartner Family Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "** * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR *673 CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any source whatsoever, * * *." The Trust document was signed by Marcella and John C. Baumgartner, petitioners' son, as the Trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Shortly after the creation of the Trust, Calvin was appointed a trustee. On July 9, 1973, Calvin was appointed the Executive Manager of the Trust and Marcella was appointed Executive Secretary of the Trust for the life of the Trust. The Trust's Manager, Secretary and all other officers were to be paid as independent consultants and in such amount as determined by the majority of the trustees. On July 17, 1973, Calvin and Marcella executed certain documents which conveyed certain real property, personal property, and life insurance policies to the Trust. Also, on July 17, 1973, Calvin signed a document which conveyed to the Trust "* * * exclusive use of my lifetime services and *674 all of the currently earned remuneration accruing therefrom." Further, on this same date, Calvin and Marcella signed a document purporting to be an employment agreement between themselves and the Trustin which the Trust retained their services as the executive manager and executive secretary, respectively. Article IIIof the Agreement, provides "the managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the managers and the Trustees, substantiated by the minutes of the Trust." Documents entitled "Units of Beneficial Interest" were issued. These documents provided, in part, that each certificate of beneficial interest "conveys no interest of any kind in the Trust assets, management or control thereof." The Trust initially issued 100 units to Calvin. On July 18, 1973, Calvin transferred 50 units to Marcella. Thereafter they conveyed 11 units to each of their five children and Calvin and Marcella retained 20 and 25 units, respectively. During the years at issue, the Trust did not enter into a contract with either Calvin or Marcella's employer; nor did either *675 employer make payment to the Trust for the services performed by petitioners. Further, petitioners' assignment of their Koscot distributorship was not recognized by Koscot. During each of the years involved petitioners received wage and business income for services performed as follows: 1973
1974
Sub Zero Freezer Co., Inc.
$ 5,393.79
$ 11,857.25
J.F. Rothamer Meat Co.
86.77
82.00
Other income
0
1,037.77
Business income (Loss)
(186.39)
432.00
TOTAL
$ 5,294.17
$ 13,409.02
Although petitioners included substantially all of the above amounts as income they claimed a deduction of $ 5,343.79 and $ 13,962.82 for the years 1973 and 1974, respectively, to reflect the assignment of income to the Trust. In addition, petitioners reported consulting fees from the Trust. Petitioners made all of the decisions concerning the Trust including the amount of the consulting fees. Further, they caused the Trust to pay certain of their personal expenses during each of the years involved. The Trustfiled Fiduciary Income Tax Returns (Form 1041) for the years 1973 and 1974 with the Internal Revenue Service Center at Kansas City, Missouri. In his notice of deficiency *676 to petitioners, respondent determined that all of the income reported by the Trust for each year was earned by and taxable to petitioners. OPINION The issue is whether the purported conveyance by petitioners of their property and lifetime services to the Trust was effective to shift the incidence of taxation on the compensation received each year from petitioners to the Trust.Petitioners contend that a valid trust was created and the assignment of their lifetime services and all the income accruing therefrom was sufficient to shift the incidence of taxation from themselves to the Trust. Petitioners argue that the real question involved herein is the right to contract under the United States Constitution and not whether there was an assignment of income from petitioners to the Trust. As a result of the assignment, petitioners argue that they performed service as agents for the Trust in that their services were subcontracted to their employers. Also they contend that the assignment was effective to transfer the self-employment income to the Trust. Respondent disagrees with petitioners' position and maintains that the Trust lacks economic reality, that the compensation received *677 by the Trust was an anticipatory assignment of income ineffective to treat the compensation as that of the Trust, and that any income earned by the Trust is taxable to petitioners under the grantor trust provisions set forth in sections 671 through 677. We agree with respondent that the various items of income are taxable to petitioners. We agree with petitioners that they have a constitutional right to enter into contractual arrangements. But it is also true that a taxpayer may not enter into such arrangements that are designed simply to alter the Federal income tax consequences of income between various entities without regard to the true earner of such income. Lucas v. Earl,281 U.S. 111 (1930). Asstated by the Supreme Court the "first principle of income taxation" is that income must be taxed to the one who earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Further, it is the person or entity that controls the earning of the income, and not the one who ultimately receives it, that must pay the income tax thereon. American Savings Bank v. Commissioner,56 T.C. 828, 838-839 (1971); Wesenberg v.Commissioner,69 T.C. 1005 (1978). *678 As we said in American Savings Bank v. Commissioner,supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. In the instant case petitioners executed documents which assigned their services to the Trust and all of their earned income. However, the record is clear that petitioners in their individual capacity continued their employment relationships with their employers. The Trust had no contract with the employers to perform services and, therefore, had no control over the income earned. Petitioners had complete control of their employment contracts and the earning of their other income. Petitioners' employment relationships with their employers were not affected in any way by the formation of the Trust. The fact that the employers made payment directly to petitioners further supports the proposition that they directly performed their services for their employers. Petitionersalso retained control of the Koscot distributorship for the sale of cosmetics in spite of an alleged transfer of the distributorship to the Trust. Not only was the business operated in the same manner after the transfer as before *679 the transfer, Koscot did not recognize the Trust as its distributor, but at all times herein looked to the petitioners as the distributors. From the facts in this case it is evident that petitioners' conveyance to the Trust is a classic case of a taxpayer attempting to shift the incidence of taxation on their earned income to another entity. In applying the Supreme Court's rule that income is taxed to the one who earns it, the crucial point to consider is not the timing of the assignment, but the earning of the income. Therefore, the fact that the assignment predates the earning of the income is of no help to petitioners' cause in this case since petitioners continued to earn the income. Accordingly, we hold that all amounts of income reported by the Trust during the year were earned by the petitioners. The Trust involved herein is no more effective to shift the incidence of tax from petitioners to the Trust than were similar trusts in a number of other cases where we also held such arrangements were not effective to shift the incidence of taxation from the taxpayer to the trust. See Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); *680 Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner,T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner,T.C. Memo. 1980-313; and Gran v. Commissioner,T.C. Memo. 1980-558. Further, petitioners' argument that the income is not taxable to them since they were acting as agents or subcontractors of the Trust while performing services is without merit. In Vnuk v. Commissioner,supra at 1320, the Court of Appeals said: On appeal petitioners first argue that the Tax Court erred in concluding that the conveyance of lifetime services to the Trust was ineffective to shift the incidence of taxation. Petitioners contend that where, as here, an individual performs services as an agent or "leased employee" of a trust, it is the trust, rather than the individual, that is taxed on the income accruing from the services. Cf. Rubin v. Commissioner,429 F.2d 650 (2d Cir. 1970); *681 Fox v. Commissioner,37 B.T.A. 271 (1938); Laughton v. Commissioner,40 B.T.A. 101 (1938), rev'd. on other grounds, 113 F.2d 103 (9th Cir. 1940). This argument has no merit. And in footnote 5, page 1321, of the Vnuk opinion, the Eighth Circuit commented: Because of these factors, the present case is readily distinguishable from the so-called "employee lend-out" cases where the courts have held a corporation rather than the employee is taxable. In those cases the employee was legally obligated to provide services to the corporation and the corporation had the right to direct the employee's activities and to control the amount of income the employee received for those activities. See, e.g., Rubin v. Commissioner,supra;Fox v. Commissioner,supra;Laughton v. Commissioner,supra.
In addition petitioners unconditionally assigned their services and income to the Trust under an arrangement which allowed the majority of the trustees to determine the amount of the consulting fee to be received from the Trust. Not only is such an indefinite and loose agreement unenforceable, *682 but it is unrealistic and without economic substance to conclude that a taxpayer would agree to turn over all of his earned income for an unspecified payment under such circumstances unless he was in control of the trust or other entity. Where a trust has no valid purpose other than tax avoidance it loses its economic reality, which, in turn, mandates that we disregard any attempt to shift income to a mere paper entity. See Markosian v. Commissioner,supra at 1245. To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩