DONALD F. SHUMAN EQUITY TRUST, LORAINE B. SHUMAN, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONALD F. SHUMAN and LORAINE B. SHUMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shuman Equity Trust v. Commissioner
Docket Nos. 2170-78, 2174-78. [1]
United States Tax Court
T.C. Memo 1981-264; 1981 Tax Ct. Memo LEXIS 480; 41 T.C.M. (CCH) 1608; T.C.M. (RIA) 81264; May 28, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge. These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *481 OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
Donald F. Shuman Equity Trust,
Loraine B. Shuman, Trustee
(Docket No. 2170-78)
1974
$ 115.93
Donald F. Shuman and Loraine B.
Shuman (Docket No. 2174-78)
1974
$ 8,086.70
The issues for decision are (1) whether petitioner Donald F. Shuman or a trust is taxable on partnership income earned during the year in issue; (2) whether the income of the trust is taxable to petitioner under sections 671 through 677 of the Internal Revenue Code of 1954; [3] (3) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701; (4) in the alternative, whether a taxable disposition of an installment obligation was made during 1974 when the instrument was transferred to the trust; and (5) whether petitioners are entitled to deduct the expense incurred for a trust package under section 212. FINDINGS OF *482 FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Donald F. and Loraine B. Shuman resided in Camp Douglas, Wisconsin, at the time of filing their petition herein. Petitioners timely filed a joint Federal income tax return for the taxable year 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The Donald F. Shuman Equity Trust, Loraine B. Shuman, Trustee, the petitioner in docket no. 2170-78 had its principal office in Camp Douglas, Wisconsin, at the time of filing its petition herein. The trust timely filed its Federal income tax return for the taxable year 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On December 20, 1974, petitioner Donald F. Shuman (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Pure Trust." The document was executed by petitioner for the purpose of creating a trust known as the Donald F. Shuman Equity Trust, (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR *483 HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Donald F. Shuman can maximize his lifetime efforts through the utilization of his Constitutional Rights; * * *." Petitioner's wife Loraine B. Shuman (hereinafter Loraine) and his son Stephen D. Shuman (hereinafter Stephen) were the initial trustees of the Trust. On December 20, 1974, petitioner was appointed a trustee to hold office for the life of the Trust. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents on December 23, 1974, for the purpose of conveying his real and personal property, including a 50 percent interest in Premium Green Farm partnership to the Trust and a land contract received from the sale of farm land that petitioner elected to report as an installment sale for income tax purposes. *484 The real property, including petitioner's home, was jointly owned by petitioner and his wife prior to the conveyance to the Trust. Loraine transferred her interest to petitiner prior to his conveyance to the Trust. In addition, on December 20, 1974, petitioner executed a document to convey the exclusive use of his lifetime services and all of his currently earned remuneration accruing therefrom to the Trust. In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner on December 20, 1974. Shortly after creation of the Trust, petitioner transferred 50 units to Loraine and, thereafter petitioner and Loraine made transfers so that each of their five children owned 10 units each and petitioner and Loraine owned 10 units and 40 units, respectively. The rights of the owners of the units of benefiial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor *485 any undivided interest therein, nor in the management thereof; nor shall the death of a holder entitle his heirs or legal representatives to demand any partition or division of the property of The Trust * * *." This document goes on to declare that "It is expressly declared that a Trust, and not a partnership, is hereby created; and that neither The Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of Said Trust * * *." The rights of the owners of the beneficial interests are also set forth in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of The Trustees and nothing more. * * *" The trustees were authorized, by the Declaratinof Trust, to "* * * do anything any individual may legally do in any state or country * * *." Further, "* * * Resolutions of The Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" Prior to and during the year herein petitioner was an active partner in the Premium Green Farm partnership. *486 The partnership was a farm partnership which produced agricultural crops. Petitioner was the farm manager and was primarily responsible for the every day farm operation. Although petitioner's distributions from the partnership were deposited in the Trust bank account, there was no substantive change in the operation of the partnership before or after the formation of the Trust. On December 23, 1974, petitioner and Loraine entered into an employment contract with the Trust which provided that petitioner would serve as The Executive Trustee and Loraine would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Executive Trustees shall be entitled to remuneration for their services and shall from time to time as it is mutually agreed between The Executive Trustees and the Trustees submit statements for their Consultant Fees." The agreement provided that the amount of the fees would be agreed upon between the parties. In addition, the agreement provided that the Executive Trustees were entitled to receive housing, transportation, health care and educational allowances. On its 1974 Federal income tax return the Trust reported *487 part of the income petitioner earned from his partnership interest. During 1974, petitioners paid $ 3,000 to Education Scientific Publishers (ESP) for various written materials, including a declaration of trust and various preprinted trust minutes to be used in the formation of the Trust. In addition, petitioners were also entitled to attend certain income tax seminars and to receive future legal services in the event the validity of the Trust was challenged. Petitioners deducted this amount on their 1974 income tax return as "Educational Endowment and materials used to maintain and conserve assets." Respondent determined that all of the partnership income reported by the Trust is the income of petitioner, not the Trust. In the alternative, respondent determined that if the income is taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. Also, in the alternative, respondent contends that petitioners made a taxable disposition of an installment obligation if the Trust is a separate taxable entity. With regard to the payment for the trust materials, respondent determined that the expenditure is a personal expense *488 and not deductible. OPINION The first issue to consider is whether petitioner or the Trust is taxable on a certain amount of partnership income earned during the year herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth an alternative argument to support his position that all of the partnership income is properly taxable to petitioners and, an alternative argument that the Trust is an association taxable as a corporation. Since we fully agree with respondent's basic position, our opinion will be limited to this extent. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain that the Trust had the right to engage petitioners *489 as independent contractors and to vend their services to third parties. The petitioners also point out that since the partnership interest and other assets were in fact transferred to the Trust at least any income from these sources should be recognized as that of the Trust. Although it is clear that the partnership income earned by petitione r as a partner in the Premium Green Farm partnership, is taxable to him since he earned and maintained control over the income in spite of the formatin of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioners, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of paper. As we said in Markosian v. Commissioner, supra at 1241, *490 "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law accordingly to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than from the partnership which compels the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as lifetime trustees by the trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no *491 change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance to petitioner of complete control of the future income to be earned by him. In fact, there was no understanding concerning the pyment of consulting fees for either the services of petitioner or Loraine. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the year at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); *492 Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; and Gran v. Commissioner, T.C. Memo. 1980-558. Since we have found for respondent on his primary position concerning the trust issue, the remaining issue is whether petitioners may deduct the amount paid to ESP for the trust materials and other promised services. Although some of the expenses incurred may be deductible under section 212, it is clear that the majority of the amount paid for the ESP package was for personal reasons and not deductible for income tax purposes. With regard to items which are deductible as an expense incurred in connection with tax matters under section 212, petitioners have failed to show what portion of the total expenditure relates to such items. Since petitioners have the burden of proof in this matter, respondent's determination must be sustained. Welch v. Helvering, 290 U.S. 111 (1933). See *493 also Kellner v. Commissioner, T.C. Memo. 1976-72, affd. 553 F.2d 93 (2d Cir. 1977), and Contini v. Commissioner, 76 T.C. No. 37 (March 19, 1981). To reflect the conclusions reached herein, Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purposes of trial, briefing, and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩