PAUL L. COOPER AND MARY COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; PAUL L. COOPER FAMILY ESTATE (A TRUST), MARY COOPER, TRUSTEE, SECRETARY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket Nos. 2536-78, 2540-78.[1]
United States Tax Court
T.C. Memo 1981-369; 1981 Tax Ct. Memo LEXIS 375; 42 T.C.M. (CCH) 418; T.C.M. (RIA) 81369; July 16, 1981
Joseph Weigel, for the petitioners. Wayne B. Henry and Nelson Shaffer, for the respondent. DAWSON
MEMORANDUM FINDINGS *376 OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
Paul L. Cooper and Mary
1973
$ 18,835.98
Cooper (Docket No. 2536-78)
1974
1,977.06
Paul L. Cooper Family Estate
(A Trust), Mary Cooper, Trustee
1973
$ 3,765.94
(Docket No. 2540-78)
1974
1,087.56
Concessions having been made, the issues for decision are (1) whether petitioners Paul L. Cooper and Mary Cooper or the Paul L. Cooper Family Estate (A Trust) Mary Cooper, Trustee, (Trust) is taxable on commissions earned on insurance sales, net profit or loss from farming, and interest income; (2) in the alternative, if the income is taxable to the Trust, whether the Trust is an *377 association taxable as a corporation under section 7701; [3] (3) in the alternative, if the income is taxable to the Trust, whether petitioners Paul L. Cooper and Mary Cooper properly valued their ending farm inventory for the year 1973; (4) whether auto expenses were incurred for the insurance sales activity in an amount greater than allowed by respondent during the years 1973 and 1974; (5) whether travel expenses and advertising expenses were incurred in carrying on the farming activity; (6) whether an expenditure of $ 900 made in 1973 for the repair of the septic sewer system was properly capitalized by respondent; (7) whether petitioners incurred a casualty loss deduction with respect to the loss of three heifers and 2000 pine trees during 1973; and (8) in the event the farm income is taxable to the Trust, whether a deduction of $ 2,400 for services rendered is allowable as a deduction in 1973. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Paul L. Cooper and Mary Cooper resided in Mukwonago, Wisconsin, *378 at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The Paul L. Cooper Family Estate (A Trust), Mary Cooper, Trustee, the petitioner in docket no. 2540-78, had its principal office in Mukwonago, Wisconsin, at the time of filing its petition herein. The Trust timely filed its Federal income tax returns for the taxable years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On July 2, 1973, petitioner Paul L. Cooper (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating the Trust known as the Paul L. Cooper Family Estate (A Trust). The declared purpose of the Trust was: * * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her life-time services and ALL OF his or her EARNED REMUNERATION ACCURING THEREFROM, from any current source whatsoever, so that Paul L. Cooper can maximize *379 his lifetime efforts through utilization of his Constitutional Rights; * * *. Petitioner's wife Mary E. Cooper (hereinafter Mary) and his son Eugene P. Cooper (hereinafter Eugene) were the initial trustees of the Trust. On july 2, 1973, petitioner and Mary were appointed trustees to hold office for the life of the Trust. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents on July 25, 1973, for the purpose of conveying his farm real estate, farm equipment, farm supplies, inventory of mink and other personal property, including household furnishings, securities and life insurance policies to the Trust. In addition, petitioner and Mary executed documents to convey the exclusive use of their lifetime services and all of their currently earned remuneration accruing therefrom to the Trust. Mary also conveyed her down rights to petitioner in all real estate prior to its transfer to the Trust by petitioner. *380 In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner on July 25, 1973. On this same date petitioner transferred 50 units to Mary and, thereafter, on April 15, 1974, petitioner and Mary made transfers so that the units of beneficial interest were held as follows: Units
James Pasaba
15
Paula Tritz
15
Mary Cooper
30
Eugene Cooper
40
The rights of the owners of the Units of beneficial interest were prescribed in the Declaration of Trust and the certificates of beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of the property of the Trust * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, *381 present or future, have or possess any beneficial interest in the property or assets of Said Trust * * *." The rights of the owners of the beneficial interest are also set forth in the Certificate of Beneficial Interest, which certificates provide that "Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. * * *" The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "* * * Resolutions of the Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" Prior to and during the years herein petitioner actively operated the insurance business and the mink farm as sole proprietorships. Although petitioner's income from these operations was deposited in the Trust bank account, there was no other visual or substantive change in the operation of the sole proprietorships before or after the formation of the Trust. On July 25, 1973, petitioner and Mary entered into an employment contract with the Trust which provided that petitioner would serve as the Executive *382 Manager and Mary would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." During each of the years 1973 and 1974, the Trust paid personal expenses of petitioner and Mary, including housing, health care, education and insurance. In addition, the Trust paid petitioner and Mary consulting fees totaling $ 2,700 and $ 1,800 for the years 1973 and 1974, respectively. The consulting fees were based on the personal needs of petitioner and Mary and not based on the services performed. On its 1973 and 1974 Federal income tax returns the Trust, after its formation, reported the income petitioner earned from the insurance and mink farm operations. Also, during 1974, the Trust reported interest income earned from a savings account in the amount of $ 2,077.10. In addition, the Trust deducted for each of the years "administrative" expenses which consisted of petitioner's personal, *383 living, and family expenses and "consulting fees" paid by the Trust to petitioner and Mary. After the Trust was formed petitioner and Mary reported the consulting fees received from the Trust on their 1973 and 1974 Federal income tax returns. Respondent determined that all of the net income from the mink farm operation, insurance business and the interest income reported by the Trust are income of petitioner, not the Trust. In the alternative, respondent determined that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. During 1973 and for all prior years thereto, petitioner valued his mink inventory by using the farm unit price method of $ 15 per unit. At the end of 1973, petitioner's mink inventory totaled 550 dark mink and 250 violet mink. Respondent adjusted petitioner's ending mink inventory at the time of the assignment of the mink to the Trust based on the value the Trust used as its beginning mink inventory. During 1973 and 1974, petitioner traveled throughout a two county area in and around Mukwonago, Wisconsin for the purpose of selling insurance. During 1973 and *384 1974, either petitioner or the Trust claimed auto expense deductions in the amounts of $ 1,830.78 and $ 3,996, respectively. Respondent allowed auto expense deductions in the amounts of $ 600 and $ 1,200 for 1973 and 1974, respectively, and disallowed the balance of the amounts claimed for lack of substantiation. Petitioners submitted receipts at trial for gasoline purchases and other miscellaneous auto expenses totaling $ 3,004.10 and $ 4,243.78 for the years 1973 and 1974, respectively. During 1973 and 1974 petitioner traveled throughout the United States and Europe for business purposes, attending mink shows and locating brood mares for a horse raising activity, which was a part of his farming activity. During 1973 and 1974, petitioner, or the Trust, claimed travel and advertising expenses in the amounts of $ 5,406.14 and $ 2,416.66, respectively. Petitioners submitted receipts at trial for various travel expenses. During 1973, petitioner expended $ 900 for the repair of the septic sewer system located on the farm. Respondent determined that the expenditure was a capital improvement to the system and disallowed the expenditure as an item of expense. The $ 900 expenditure *385 did not materially add to the property or appreciably prolong its life, but simply maintained the system in an ordinary and efficient operating condition. During April 1973, 2000 pine trees located on petitioner's farm land were destroyed by fire. Petitioner purchased the trees about 1968 from the State of Wisconsin Department of Natural Resources for $ 156. In addition, petitioner expended $ 6 for the rental of a tree planter which was used to plant the trees. The fair market value of the pine trees immediately before the fire was $ 5,000. The Trust claimed a casualty loss on its 1973 income tax return for this loss in the amount of $ 4,000. On May 7, 1973, petitioner purchased three heifers for $ 1,200. On September 12, 1973, the heifers were artificially bred at a cost of $ 170. Sometime thereafter during 1973, the heifers broke into a corn field and died from an excessive consumption of corn. The fair market value of the heifers immediately before their death was $ 1,370. The Trust claimed a casualty loss on its 1973 income tax return for this loss in the amount of $ 1,355. Respondent disallowed a deduction of $ 2,400 paid by the Trust to Eugene for failure of proof *386 as to when the payment was made. Respondent concedes that the deduction is allowed in the event the Court finds that the farm operation was taxable to petitioner. OPINION The first issue to consider is whether petitioner or the Trust should report the various amounts of income earned during the years herein. Respondent's basic position with regard to this issue is that the Trust established by petitioner is illusory and has no economic significance and should be disregarded for income tax purposes. In addition, respondent sets forth alternative arguments to support his position that the income reported by the Trust is properly taxable to petitioners. Since we fully agree with respondent's basis position, our opinion will be limited to this extent. Petitioners argue that they have a constitutional right to enter into a contract with the Trust for their services and to convey their property to the Trust. Further, they argue that since a valid trust was created the income earned from their services and property is properly taxable to the Trust. Petitioners recognize they performed their services in the same manner both before and after formation of the Trust, but maintain *387 that the Trust had the right to engage petitioners as independent contractors and to vend their services to third parties. The petitioners also point out that since the farm assets and other income producing assets were in fact transferred to the Trust the income from these source should be recognized as that of the Trust. Although it is clear that the income earned by petitioner from the farming operating and the insurance business are taxable to him since he earned and maintained control over the income in spite of the formation of the Trust under the doctrine set forth in Lucas v. Earl, 281 U.S. 111 (1930), the facts in this case compel us to go beyond this doctrine and to concur with respondent's determination that the Trust has no economic substance and, on this basis, must be totally disregarded for income tax purposes. Markosian v. Commissioner, 73 T.C. 1235 (1980). Based on the various documents executed by petitioner, the appearance of a trust was established. However, upon an examination of the Trust document and the actual operation of the Trust, it is without question that the Trust rests on a foundation of meaningless pieces of *388 paper. As we said in Markosian v. Commissioner, supra at 1241, "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction. Furman v. Commissioner, 45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967)." In the instant case we see no change in economic relationships. Under the circumstances in this case it was virtually impossible for petitioners to change the economic relationship between themselves and the other beneficiaries. Petitioners had no meaningful source of income other than the farm income and insurance commissions which compelled the Trust to pay the majority of their personal expenses. But more important is the grant of absolute and complete discretion to petitioners as life-time trustees by the Trust language "A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such act is within their power." Such an unbridled power gives petitioners as trustees the same control over the property conveyed to the Trust as they enjoyed *389 prior to the formation of the Trust. Accordingly, in spite of the Trust, there was no change in petitioners' economic position. In addition, we do not accept as an economic reality the assignment of petitioner's and Mary's future services and income to the Trust solely in exchange for an indefinite payment for such services without assurance of having complete control of the future income to be earned by them. In fact, there was no understanding concerning the payment of consulting fees for petitioner's or Mary's services. Instead petitioners were paid an amount based on their personal needs. Under these circumstances we cannot find that petitioners had a meaningful or enforceable employment contract with the Trust. Based on the facts herein, it is clear that the Trust had no independent economic significance during the years at issue and the Trust should be disregarded for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); *390 Markosian v. Commissioner, supra; Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Gran v. Commissioner, T.C. Memo. 1980-558; Taylor v. Commissioner, T.C. Memo. 1980-313; and Horvat v. Commissioner,T.C. Memo. 1977-104, affd. by unpublished order (7th Cir., June 7, 1978), cert. denied 440 U.S. 959 (1979). With regard to the auto, travel and advertising expense issues, respondent's adjustments were based on petitioner's failure to substantiate the amounts claimed. Petitioner testified that expenses were incurred in the amounts claimed and submitted numerous gasoline tickets and a small number of other travel receipts in an attempt to substantiate the deduction. However, petitioner's testimony was vague and inconclusive and the various receipts cannot be reconciled as to business use. In addition, with regard to the travel expenses, petitioner has failed to comply with section 274(d) which requires records to show the time, place, amount and business purpose for each expenditure. Since petitioners have the burden of proof on these issues, and have failed to meet this burden, *391 respondent's determination must be sustained. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax court Rules of Practice and Procedure.
The next issue relates to the correctness of respondent's determination that a $ 900 expenditure made for the repair of the septic sewer system should be capitalized. We disagree with respondent's conclusion. The expenditure was made to maintain the property and not to improve or prolong the life of the septic system. As such the expenditure is deductible as a current expense. Section 1.162-4, Income Tax Regs.
The parties agree that a deduction is allowable as a casualty loss for the pine trees destroyed by fire, but disagree as to the amount of the loss. Respondent argues that, although the fair value of the trees was greater than the deduction allowed, a casualty loss is limited to the adjusted basis of the property involved. We agree with respondent that the deduction for the pine trees is limited to the adjusted basis of the trees amounting to $ 162, which includes the purchase price of the lost trees in the amount of $ 156, and the cost of planting in the amount of $ 6. Section 1.165-7, Income Tax Regs. Since *392 the trees were a part of the property used in a trade or business the $ 100 limitation set forth in section 165(c) does not apply. During 1973, petitioner purchased three heifers for a total cost of $ 1,200. The heifers died from overeating corn. Petitioner claimed a casualty loss in respect of the heifers but we need not explore his right to a deduction on that basis because we are satisfied that since the heifers were a part of the farm operation, the loss in the amount of $ 1,200 is deductible as a loss incurred in the operation of a farm as a trade or business. Section 1.165-6, Income Tax Regs. Although petitioners improperly included the cost of breeding the heifers as a part of the loss, the amount, which totaled $ 170, is deductible as an ordinary and necessary expense in 1973, the year of the expenditure. Section 1.162-12(a), Income Tax Regs.
To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purposes of trial, briefing and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩