VICTOR J. SOLONIUK AND THORA F. SOLONIUK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Soloniuk v. Commissioner
Docket No. 11449-79.
United States Tax Court
T.C. Memo 1982-339; 1982 Tax Ct. Memo LEXIS 414; 44 T.C.M. (CCH) 160; T.C.M. (RIA) 82339; June 16, 1982. Gloria T. Svanas, for the petitioners. Mark H. Howard, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code *416 of 1954, [1] and Rule 180. [2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1976 in the amount of $11,943.00 and an addition to tax under section 6653(a) in the amount of $597.00. The issues for decision are: (1) whether the petitioners' establishment and operation of an Equity Trust lacked economic substance and constituted a sham transaction for purposes of the Federal income tax law; (2) whether the assignment of a doctor's lifetime services and all earned remuneration therefrom to an Equity Trust constituted an anticipatory *417 assignment of income; (3) whether the petitioners violated the grantor trust provisions of sections 671 through 677 by use of an Equity Trust; (4) whether petitioners are liable for an addition to tax due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a); and (5) whether petitioners are entitled to any deductions other than those allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and two supplemental stipulations of facts and exhibits attached to the stipulations are incorporated herein by this reference. Petitioners resided in Loma Linda, California, at the time their petition was filed. Petitioners filed a joint individual income tax return for the taxable year 1976. During 1976, petitioner Dr. Victor J. Soloniuk (Victor) was an anesthesiologist. Petitioner Thora F. Soloniuk (Thora) was employed as a nurse. On June 23, 1976, Victor executed a Declaration of Trust for the V. J. Soloniuk Equity Trust (Trust). Petitioners used preprinted documents purchased from Educational Scientific Publishers (ESP) to create the Trust and take related *418 actions. The declared purpose of the Trust was: to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Victor J. Soloniuk (Grantor-Creator's Name) can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Victor J. Soloniuk (Grantor-Creator's Name) feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. On June 25, 1976, Victor and the other trustees executed an agreement on behalf of the Trust which stated in part that: The Doctor [Victor], in consideration of the services performed by the Trust, shall pay to the Trust an amount equal to eighty (80) per centum of the gross income of the Doctor derived from the operation of his business, said amounts to be computed *419 and paid on a monthly basis. Petitioners conveyed their own residence on Daisy Avenue to the Trust, and petitioners continued to live in their home after that transfer. Petitioners also purportedly transferred various pieces of real property to the Trust. Victor purportedly transferred an interest in a limited partnership to the Trust. In return petitioners received beneficial units in the Trust. The beneficial interests were divided into 100 units by certificates, which were forms preprinted by ESP. Ownership of a beneficial certificate did not give the holder any interest of any kind in the Trust assets, management or control of the Trust. This was set forth in the certificates of beneficial interest which state that the benefits conveyed consisted solely of the "emoluments as distributed by the action of The Trustees and nothing more." The certificates were transferable and in fact various transfers of the units were made. On June 25, 1976, a certificate of 100 units of beneficial interest in the Trust was issued to Victor. On the same day, Victor's certificate of 100 units was cancelled and each petitioner received a certificate of 50 units. On the same day, *420 these certificates were cancelled and twenty units were issued to Victor, thirty units to Thora, and 12 1/2 units were issued to each of their four children; Vickie L., Ronald G., Donald S. and Leonard Soloniuk. Petitioners were the trustees of the Trust during the year in issue. Their adult daughter, Vickie L. Soloniuk (Vickie), was a trustee. Victor was the executive trustee and Thora was the executive secretary of the Trust.A majority of the Trustees was required to conduct Trust business. The Trust attempted to deduct various personal expenses of the petitioners on the fiduciary income tax return filed for the Trust in 1976. These expenses included, but were not limited to, fire insurance, utility and maintenance expenses on the home in which petitioners lived, medical and automobile expenses of petitioners and their family, and part of petitioner's charitable contributions. The Trust deducted a total of $7,933.00 as a charitable deduction, which included $6,258.00 paid to the Seventh Day Adventist Church. It is clear that petitioners at all times retained full control over the assets of the Trust, and as trustees of the Trust, were empowered to "do anything any individual *421 may legally do" subject to certain restrictions which would preclude the making of charitable contributions. After creation of the Trust, petitioners continued to utilize the property which had been transferred to the Trust for their own benefit and in exactly the same manner as it would have been used had the Trust not been created. The management of the real properties, the holding of limited partnership interest, and Victor's practice of medicine did not change after the Trust was formed. Petitioners continued to carry out these activities in the same manner as they had before the creation of the Trust. The Trust, although not so named, was an ESP Family Trust. Victor did not report the sum of $65,063.00, which represented eighty percent of his income from his medical practice on petitioners' joint return for 1976. Instead, that amount was reported on the Trust's return for 1976. Petitioners reported on their return $4,100.00 as consulting fees from the Trust. The Trust deducted this amount on its return. Petitioners claim the Trust made distributions of $47,485.00 to the beneficiaries, including petitioners' children. Petitioners reported as income $21,771.00 in distributions *422 from the Trust. Any distributions from the Trust to the children were gifts from petitioners. Other amounts of petitioners' rental income, limited partnership income and capital gains were reported on the Trust return. For 1976, respondent determined that the $65,063.00 from Victor's medical practice was earned by Victor and not reported by him since it was improperly reported by the Trust. A similar determination was made with respect to the petitioners' rental income, the limited partnership income and capital gains. Respondent determined that petitioners were entitled to many itemized deductions erroneously claimed by the Trust. Respondent determined that the consulting fees of $4,100.00 paid by the Trust and the $21,771.00 distribution from the Trust were returns of capital and reduced petitioners' gross income accordingly. Respondent also determined self-employment tax of $1,209.00 and the deficiency and addition to tax under section 6653(a) set forth above. OPINION At trial, Victor seemed to believe, because the "Equity Trust" was not named the "family Trust", that this made some difference. The nomenclature used cannot obscure the realities of the situation. An *423 ESP family trust by an other name remains an ESP family trust and we have so found. The ABC's to be derived from our holdings in the cases cited below are that the arrangements reflected in ESP family trusts do not shelter a taxpayer from taxation. [3] We again sustain respondent's determinations for all the reasons set forth below. In creating the Trust, Victor ostensibly transferred his lifetime services and all his earned remuneration to the Trust. Only two days later, Victor disregarded the Trust by assigning only eighty percent of his earned remuneration from his medical practice to the Trust. Petitioner retained twenty percent of his medical earnings for his own use despite the provisions of the Trust. We observe that the conclusions we reach in this case would not change even if Victor had transferred only eighty percent of his lifetime services to the Trust. Petitioners disregarded the Trust by paying themselves consulting fees and receiving distributions from *424 the Trust. Aside from the fact that we read the Trust provisions as precluding charitable contributions, we find that petitioners further disregarded the Trust by using it to make their own charitable contributions. When asked what purpose of the Trust was furthered by paying $6,258.00 to a church, Victor responded as follows: "Simply because being deeply religious, we feel that 10 per cent of our income -- or the income of which we have control * * * belongs to God and we figure 10 per cent * * *." It is commendable that petitioners are willing to render unto their church what is due their church; we wish they were as willing to render unto their government what is due their government. [4]
Petitioners' attempt to build an ESP paper palace to avoid taxation results in a house of cards which collapses of its own weight when scrutinized. Our review of the record compels us to conclude that the Trust lacked economic substance, was a sham, and was a nullity *425 for Federal income tax purposes for the reasons so carefully set forth in Markosian v. Commissioner,73 T.C. 1235 (1980). [5] As the Court there stated at 1241, even assuming the validity of the Trust under State law, the Trust "cannot be recognized as a separate jural entity for Federal income tax purposes." Accordingly, respondent's determination is sustained on these grounds. Additional reasons supporting respondent's determination are set forth below. It is clear that petitioners cannot contract away their liabilities for Federal income taxes [6] nor can they anesthetize us to the fact that they tried to do so. As petitioners' brief states at p. 7: The Supreme Court has described as the "first principal [sic] of income taxation" the maxim that income must be taxed to the one who earns *426 it. Commissioner v. Culbertson, [unofficial citation], 337 U.S. 733, 739 - 40 (1949). We agree, and we find that Victor earned the income from his medical practice. Taxation of such income cannot be escaped by anticipatory arrangements assigning it to someone else. Lucas v.Earl,281 U.S. 111 (1930). Time and time again, trust devices similar to the one used by petitioners have been found to be anticipatory assignments of income which did not shelter the taxpayer from taxation on his income, regardless of the effect of these assignments under State law. See, e.g., Vnuk v.Commissioner,T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v.Commissioner,69 T.C. 1005 (1978); Horvat v. Commissioner,T.C. Memo. 1977-104, affd. 582 F.2d 1282 (7th Cir. 1978). Under the maxim quoted above, there is no question but that respondent's determination must be sustained as to the assignment of income. A reading of the decisions shows that grantors of ESP family trusts repeatedly have been *427 unable to escape taxation because of the grantor trust provisions of sections 671 through 677. See, e.g., Vnuk v. Commissioner,supra;Vercio v. Commissioner,supra;Wesenbergv. Commissioner,supra;snyder v. Commissioner,T.C. Memo. 1982-258; Basham v. Commissioner,T.C. Memo. 1980-545. We reach the same conclusion here. Petitioners are taxable on the income of the Trust since they retained the power to control it. In fact, it would be unrealistic to assume that anyone would transfer his lifetime services to an ESP family trust without having such control. Petitioners claim that Vickie, as a trustee and holder of units of beneficial interest, was an adverse party for purposes of sections 671 through 678. We do not agree. Whether the economic arrangements of a trust cause a trustee to be an adverse party is a factual question dependent on the merits of each case. Paxton v. Commissioner,520 F.2d 923 (9th Cir. 1975), affg. 57 T.C. 627 (1972). Based on Victor's testimony, it appears that Vickie merely executed documents for her parents. In any *428 event, petitioners have failed to prove that the interest of Vickie was a "substantial beneficial interest" and on this record we find to the contrary. Even if her interest could be characterized as substantial, the record does not indicate in any way that Vickie was an adverse party. Sections 672 and 674. See Wesenberg v. Commissioner,supra;Broncatti v. Commissioner,T.C. Memo. 1981-452; and Antonelli v.Commissioner,supra.Rather, there is nothing in the record to show by a preponderance of the evidence that this adult child of petitioners was anything but a related or subordinate party presumed to be subservient to the grantor under section 672(c) for purposes of sections 674 and 675. It is clear that petitioners were not adverse parties to each other. Vercio v. Commissioner,supra.Based on the application of the grantor trust provisions, we sustain respondent's determinations. The five percent addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations in the family trust cases in situations similar to the one before us has been upheld by this *429 Court in virtually every case. Wesenberg v.Commissioner,supra.[7] We agree with the statement made with respect to an ESP family trust in Harris v. Commissioner,T.C. Memo. 1981-46: "To anyone (and we would include petitioners) not incorrigibly addicted to the 'free lunch' philosophy of life, the entire scheme had to have been seen as a wholly transparent sham." Considering that both petitioners were well educated, one a doctor and the other a nurse, we find it difficult to believe that they could have envisioned the Trust as anything other than a "flagrant tax avoidance scheme." Wesenberg v. Commissioner,supra at 1015; see also Brown v. Commissioner,T.C. Memo. 1982-253. We find that they have failed to carry their burden of proof that respondent was in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In fact, we believe respondent properly determined that the addition to tax under section 6653(a) should be imposed. *430 There was some testimony by Victor to the effect that he was entitled to deductions for expenses of maintaining a home office. We do not have to reach the question of whether petitioner satisfied the stringent requirements of section 280A, which neither party briefed, because there is no way we can ascertain from this record what expenses were attributable to the medical practice as compared to personal uses. With respect to the home office or any other alleged business expense. We find that petitioners failed to prove whether any such expenses were disallowed by respondent. For all we know, the expenses may have been allowed. In short, petitioners have failed to meet their burden of proving that they are entitled to deductions other than those allowed by respondent. Welch v. Helvering,supra; Rule 142(a). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of the Chief Judge, on the authority of the "otherwise provided" language of Rule 182 Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. See Antonelli v. Commissioner,T.C. Memo. 1980-544; Basham v.Commissioner,T.C. Memo. 1980-545; and Corcoran v. Commissioner,T.C. Memo. 1980-546↩.
4. Since petitioners are deeply religious people we remind them of the statement in Matthew 22:21 (King James Version): "Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's.↩
5. See e.g., Ferguson v. Commissioner,T.C. Memo. 1982-251; Neve v.Commissioner,T.C. Memo. 1981-39; and Antonelli v. Commissioner,supra.↩
6. In light of our disposition of this case, there is no need to address petitioners' "constitutional" arguments which we find totally irrelevant and without merit.↩
7. See e.g., Crowley v. Commissioner,T.C. Memo. 1982-211; Broncatti v. Commissioner,supra;Ferguson v. Commissioner,supra; and Antonelli v. Commissioner,supra.↩