F. LYLE AND GEORJEAN E. FOGLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fogle v. Commissioner
Docket No. 9050-83.
United States Tax Court
T.C. Memo 1986-74; 1986 Tax Ct. Memo LEXIS 534; 51 T.C.M. (CCH) 490; T.C.M. (RIA) 86074; February 19, 1986. F. Lyle Fogle and Georjean E. Fogle, pro sese. Thomas J. Miller, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner *536 determined deficiencies in petitioners' Federal income tax as follows: Taxable
Addition to Tax
Year
Amount
under sec. 6653(a) [1]
1979
$9,299.91
$503.40
1980
5,842.45
287.82
The issues for decision are: (1) Whether the F. Lyle Fogle Trust will be recognized for Federal income tax purposes; (2) whether petitioners are entitled to deduct the cost of organizing the F. Lyle Fogle Trust; (3) whether petitioners are chargeable with constructive dividends in the taxable years 1979 and 1980; (4) whether petitioners are liable for additions to tax under section 6653(a); and (5) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are so found and incorporated by this reference. F. Lyle Fogle (Mr. Fogle) and Georjean E. Fogle (Mrs. Fogle), husband and wife, were residents of Tulsa, Oklahoma, during the taxable years 1979 and 1980 and at the time of filing of the petition. Petitioners timely filed joint Federal income tax returns for the taxable years 1979 *537 and 1980 with the Tulsa, Oklahoma, office of the District Director of Internal Revenue at Oklahoma City, Oklahoma. The F. Lyle Fogle Trust fiduciary income tax return for the taxable year 1979 was filed with the Tulsa, Oklahoma, office of the District Director of Internal Revenue at Tulsa, Oklahoma, and the F. Lyle Fogle Trust fiduciary income tax return for the taxable year 1980 was filed with the Internal Revenue Service Center in Austin, Texas. Mrs. Fogle's father owned one-half the stock of two corporations, Tulsa Bronze Works, Inc., and Pump Valve Specialty Co., Inc., and was president of both corporations. Shortly before Mrs. Fogle's father died in 1969, it was agreed that Mr. Fogle should join his father-in-law's business in order to continue business operations when Mrs. Fogle's father died. Ultimately, Mr. and Mrs. Fogle obtained her father's interest in the two corporations. [2]
Mr. Fogle managed his wife's family business until 1979 when petitioners concluded "that it was desirable to recognize the original source *538 of the family estate, to enhance its conservation, maintenance and protection, and to confirm control in * * * Georjean and her heirs." To accomplish this desire, petitioners decided to create a trust. On or about May 1, 1979, Mr. Fogle and Mrs. Fogle traveled from their home in Tulsa, Oklahoma, to Carrolton, Texas, to meet with John A. Flack (Flack). Flack, who is not an attorney, provided the Fogles with forms and assistance to establish a family trust. The Fogles paid Flack $4,000 for his services. The Fogles did not seek the opinion of an attorney concerning the validity of such a trust before creating their own. Mr. Fogle is a certified public accountant and worked as an Internal Revenue Agent for almost 4 years before joining his father-in-law's business. On May 1, 1979, Mr. Fogle signed a Declaration of Trust purporting to create "The F. Lyle Fogle Trust" (hereinafter referred to as the trust). Mrs. Fogle and petitioners' son, Glenn, were named as trustees and were given the discretion to distribute all or part of the current income of the trust to the beneficiaries. The trust was to continue in existence for 25 years unless the trustees unanimously decided to terminate *539 it at an earlier date. The declaration also provided for the issuance of certificates representing 100 units of Beneficial Interest. The holders of these certificates, which were negotiable, were the beneficiaries of the trust. Prior to the establishment of the trust, Mr. Fogle and Mrs. Fogle owned several items of real and personal property as joint tenants. To facilitate the establishment of the trust, Mrs. Fogle conveyed her interest in the jointly owned property to her husband. On May 6, 1979, Mrs. Fogle transferred her interest in the family residence by quit claim deed to her husband. On the same date, she transferred by quit claim deed her interest in a 160-acre farm in Delaware County, Oklahoma. [3] The personal property conveyed to her husband included personal items and home furnishings. Mrs. Fogle also conveyed her interest in *540 corporate stock of the family businesses owned by Mr. Fogle and her. She conveyed her interest in 75 shares of Tulsa Bronze Works, Inc. and 500 shares of Pump Valve Specialty Co., Inc., which represented one-half of all of the outstanding shares of these corporations. She also conveyed her interest in 60 shares of a third corporation, Bronze Company of Oklahoma, Inc., which represented 100 percent of the shares outstanding. Mrs. Fogle also transferred to her husband by quit claim deed her interest in certain real property used by the above corporations, known as the foundry property. No gift tax returns were filed with respect to any of the transfers from Mrs. Fogle to Mr. Fogle. On May 7, 1979, Mr. Fogle transferred his interest in real and personal property including the family residence, the 160-acre farm located in Delaware County, Oklahoma, and the foundry property through a series of quit claim deeds to the trust. The shares of Tulsa Bronze Works, Inc., Pump Valve Specialty Co., Ins., and Bronze Company of Oklahoma, Inc., were also conveyed to the trust. [4] the property conveyed to the trust had a total fair market value of approximately $1 million. *541 On the same date, Mr. Fogle executed a document that purported to convey to the trust, "the exclusive use of my life-time services and all of the currently earned remuneration accruing therefrom". On May 10, 1979, the trust executed agreements with Tulsa Bronze Works, Inc., Pump Value Specialty Co., Inc., and Bronze Company of Oklahoma, Inc. The agreements purported to provide the services of Mr. Fogle to these companies with the compensation for these services to be paid to the trust. These agreements contained a clause describing Mr. Fogle's duties as follows: "[Mr. Fogle] shall actively perform all requested services on behalf of the Company on a full time basis at the time and place, and in the manner, determined by the Company." Mr. Fogle continued to manage the corporations after the formation of the trust in the same manner as he had before. Despite the purported transfer of services by Mr. Fogle to the trust and the foregoing agreements between the three corporations and the trust, the trustees adopted a resolution that the trust not have employees. The minutes of May 23, 1979, provide: That, THIS TRUST need NOT have any employees in the sense that NO ONE will be *542 carried on a payroll as such. That is to say, that THIS TRUST need NOT withhold State or Federal income taxes or Social Security taxes. ALL its executives, agents or other employees, including the Executive Trustee and the Trust Secretary will be remunerated as consultants receiving consultant fees on a contract basis, and any and all remuneration paid to them will be reported by THIS TRUST at the year end on IRS Form 1099. Initially, all 100 units of beneficial interest were issued to Mr. Fogle. However, on May 10, 1979, Mr. Fogle's certificate of beneficial interest was cancelled and certificates for 50 units each were issued to Mr. and Mrs. Fogle. On May 15, 1979, Mr. Fogle's certificate representing 50 units of beneficial interest was cancelled and certificates for 25 units each were issued to Glenn and petitioners' other child, Jeanne. At the time the trust was created Glenn was an 18-year old college freshman at Texas Christian University in Fort Worth, Texas. Jeanne was a minor living with her parents. When the transfers of the certificates of beneficial interest were completed, the units outstanding were as follows: Certificate
Number
holder
of units
Mrs. Fogle
50 units
Glenn
25 units
Jeanne
25 units
*543 The trust opened a checking account over which Mrs. Fogle and Glenn were given signatory power. Although authorized to write checks on the trust account, Glenn never did so. Throughout the years in issue, amounts were paid out of the trust account to maintain petitioners' personal residence and automobile, as well as to pay the medical costs of Mrs. Fogle, Glenn, and Jeanne. Mr. and Mrs. Fogle and Jeanne continued to reside in the family residence rent free and use the household furnishings to the same extent as before the transfer of these properties to the trust. During one summer vacation from college, Glenn also lived at the family residence rent free. For the taxable years in issue the trust received and reported as income amounts paid by Tulsa Bronze Works, Inc., and Bronze Company of Oklahoma, Inc., for services rendered by Mr. Fogle. [5] The trust also reported small amounts of income produced by assets placed in the trust by petitioners. Furthermore, the trust claimed deductions that would otherwise be itemized deductions or nondeductible personal expenses of petitioners including expenses for mortgage interest, utilities, repairs, and maintenance of their residence. *544 The income reported and the deductions claimed by the trust for the years in issue is summarized as follows: Income
1979
1980
Paid by Tulsa Bronze
$31,061.54
$44,800.00
Works, Inc., for
Mr. Fogle's services
Paid by Bronze Company
11,143.62
1,207.86
of Oklahoma, Inc., for
Mr. Fogle's services
Interest income
154.06
273.72
Net rental income
116.66
Total
$42,359.22
$46,398.24
Deductions
Charitable contributions
$ 2,903.37
$ 5,900.75
Interest and Taxes
691.57
1,334.09
Fiduciary fees
4,600.00
15,200.00
Attorney, accountant,
and return preparer fees
4,800.00
Distributions
24,000.00
15,575.90
Other deductions
3,517.00
3,587.50
Total
$35,711.94
$46,398.24
Taxable income (less
$100 exemption)
$ 6,547.28
On their joint income tax returns for the taxable years 1979 and 1980, the Fogles reported the following items related to the trust: 1979
1980
Distributions of
$15,323.66 $7,787.94
Trust income
Management fees
6,550.00 15,200.00
Fees for "professional
(4,000.00)
accounting and tax
service"
*545 The $4,000 claimed as a deduction for "professional accounting and tax service" by the Fogles on their 1979 joint Federal income tax return represents the amount paid to Flack for his assistance in establishing the trust. During the taxable years 1979 and 1980, Tulsa Bronze Works, Inc., made payments for the personal benefit of Mr. Fogle in the amounts of $1,990.38 and $965.44, respectively. The amounts were not reported as income on either the trust's fiduciary income tax returns or the petitioners' joint individual income tax returns. In the statutory notice of deficiency, the Commissioner reallocated the income and expenses of the trust to petitioners. Consequently, the Commissioner reduced the petitioners' taxable income by the amount of distributions of trust income and management fees related to the trust that were reported by petitioners. The claimed deduction incurred in establishing the trust in the amount of $4,000 was also disallowed. The Commissioner then determined that amounts paid by Tulsa Bronze Works, Inc., for the personal benefit of Mr. Fogle represented taxable dividends. The Commissioner also determined an addition to tax for negligence under section *546 6653(a). On August 16, 1984, respondent filed an amendment to answer in which he requested damages under section 6673. Subsequent to the receipt of the statutory notice of deficiency, petitioners met with a tax attorney concerning the possibility of challenging the Commissioner's determination. The attorney advised them that, although their case had some unique features, it was not the type of matter with which the firm wished to be involved. Petitioners did not seek any other legal opinion concerning the validity of the trust or of the merits of their case. OPINION We have before us yet another in a series of attempts by taxpayers to shift their tax burden to so-called family trusts. These cases reveal strenuous attempts by taxpayers to circumvent one of the elementary principles of tax law: that income is taxed to the one who earns it, regardless of the arrangements made to divert payment of it elsewhere. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Almost invariably the family trust devices fail in their purpose based upon one or more of the following *547 arguments: (1) The trust lacks economic reality and is merely a tax avoidance device; (2) the trust effects an anticipatory assignment of income; and (3) the grantor trust provisions of sections 671-677 apply. On numerous occasions this Court and the U.S. Courts of Appeals have considered similar attempts and the taxpayers' attempts to shift the incidence of taxation have been rejected. Holman v. United States,728 F.2d 462 (10th Cir. 1984); Hanson v. Commissioner,696 F.2d 1232 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982), affg. Memorandum Opinions of this Court; Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978). We have held that similar "family trusts" lacked economic substance and could not be recognized for Federal income tax purposes. Markosian v. Commissioner,supra at 1243-1245. *548 [6] Petitioners have not demonstrated that the facts in the instant case are distinguishable from our prior decisions in any meaningful way. After the creation of the trust, petitioners continued to use the trust assets as they had before, and petitioners exercised control over the trust income. Mr. Fogle continued to run Tulsa Bronze Works, Inc., and Pump Valve Specialty Co., Inc., without any evidence of supervision or control by the trustees despite his purported assignment of services. In short, the creation of the F. Lyle Fogle Trust did nothing to alter the status quo. "When the form of the transaction has not, in fact, altered any cognizable economic relationships, we will look through that form and apply the tax law according to the substance of the transaction." Markosian v. Commissioner,supra at 1241. We find that the trust lacked economic substance and thus is not recognizable for Federal tax purposes. As the trust *549 is not recognizable for Federal income tax purposes, we need not address the issues concerning the effect of assignment of income principles or the effect of the grantor trust provisions on whether the trust has taxable income. Nevertheless, it is clear that application of the assignment of income principles to Mr. Fogle's purported assignment of services is appropriate. Vercio v. Commissioner,supra at 1253-1255; Wesenberg v. Commissioner,supra at 1011. Moreover, the transfers by Mrs. Fogle of her interest in properties to her husband prior to the contribution of those properties to the trust cannot prevent her form being treated as a co-grantor under the grantor trust provisions. Schulz v. Commissioner,supra at 496; Neely v. United States,775 F.2d 1092, 1095 (9th Cir. 1985). Petitioners contend that they are entitled to deduct the $4,000 payment to Flack for his assistance in and forms for creating the trust. Petitioners argue that this payment is deductibel under either section 212(2) or section 212(3). We addressed the identical issue in Luman v. Commissioner,79 T.C. 846 (1982). *550 For the reasons expressed in that case petitioners may not deduct any portion of the $4,000 payment to Flack. Next, we must consider the proper characterization of payments made by Tulsa Bronze Works, Inc., for the personal benefit of Mr. Fogle in the amounts of $1,990.38 and $965.44, respectively. Petitioners do not contest that the payments were made for the personal benefit of Mr. Fogle. Petitioners' only contention is that because the 50-percent interest in Tulsa Bronze Works, Inc., owned by petitioners was conveyed to the trust, they could not be taxable on any dividends from the corporation, constructive or otherwise. However, petitioners' contention as to the proper tax treatment of these payments crumbles along with the collapse of the trust. Because of our holding that the trust lacks economic substance, petitioners are still treated as the owners of the 50-percent interest in Tulsa Bronze Works, Inc., for Federal income tax purposes. Therefore, the payments made for the personal benefit of Mr. Fogle are constructive distributions to petitioners. Ireland v. United States,621 F.2d 731, 735 (5th Cir. 1980); Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1238 (1971). *551 We must next decide whether the Commissioner properly determined an addition to tax under section 6653(a). An addition to tax under section 6653(a) is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioners bear the burden of proving that their underpayments of tax were not due to negligence or intentional disregard of rules or regulations. Vnuk v. Commissioner,621 F.2d 1318, 1321 (8th Cir. 1980); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners have failed to carry this burden.Petitioners undertook to create this trust solely upon the advice of Flack, who was neither an attorney nor an accountant.As a certified public accountant and former Internal Revenue agent, Mr. Fogle had to know that the scheme was in conflict with clear principles of Federal income tax law. Nevertheless, petitioners failed to seek a legal opinion concerning the propriety of the trust device until after the Commissioner issued his statutory notice of deficiency and they were considering filing their petition *552 in this case. The addition to tax under section 6653(a) is proper. Lastly, we must determine whether, as respondent requests in his amendment to his answer, we should award damages under section 6673. This Court is empowered to award damages up to $5,000 to the United States whenever it appears that proceedings in this Court have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless. Sec. 6673. We have examined the record before us carefully and, although the issue is a close one, we do not find that the award of damages is appropriate in this case. Of particular bearing on this question is the comment made by the attorney consulted by petitioners. Although the attorney's statement to the effect that petitioners's case had some interesting features may have only been a polite way of declining to represent petitioners, it gave petitioners some hope as to the merits of their case. For this reason, we decline to impose damages under section 6673. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The record is unclear as to whether the stock received from Mrs. Fogle's father was her separate property or jointly owned by Mr. Fogle and her.↩
3. There is ambiguity concerning the grantee of this interest. Although the granting clause names the F. Lyle Fogle Trust as grantee, the habendum clause names only F. Lyle Fogle. Because of our disposition of the tax issues before us, we may assume, without deciding under state law, that F. Lyle Fogle would be treated as the grantee.↩
4. Because of the conveyance of her interests in these corporations to Mr. Fogle and his subsequent transfers of all his interest to the trust, we need not concern ourselves with whether the stock was initially owned jointly or by Mrs. Fogle alone. See, supra,↩ note 2.
5. Neither Mr. Fogle nor the trust received any remuneration for service performed by Mr. Fogle from Pump Value Specialty Co., Inc., during the taxable years in issue.↩
6. See also Benson v. Commissioner,T.C. Memo. 1983-458; Hanson v. Commissioner,T.C. Memo. 1981-675↩.