COURTNEY F. SMITH and IMOGENE S. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 22512-84.
United States Tax Court
T.C. Memo 1986-487; 1986 Tax Ct. Memo LEXIS 115; 52 T.C.M. (CCH) 691; T.C.M. (RIA) 86487; September 29, 1986. Taylor W. O'Hearn, for the petitioners. George E. Gasper, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated April 5, 1984, respondent determined the following deficiencies in and additions to petitioners' 1980 and 1981 Federal income tax liabilities: Addition to Tax
Year
Deficiencies
I.R.C. Sec. 6653(a)(1) [1]
1980
$4,986.90
$249.34
1981
6,924.10
346.21
*117 Respondent also determined an addition to tax for 1981 under section 6653(a)(2) equal to 50 percent of the interest on the portion of the underpayment of tax attributable to negligence. The issues for decision are: (1) Whether a family trust established by petitioners is to be recognized as a taxable entity for Federal income tax purposes; (2) whether petitioners are liable for the additions to tax under section 6653(a) set forth above; and (3) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife, and resided in Benton, Louisiana, at the time the petition was filed. From 1973 through 1981, Mr. Smith was employed as the field director by Liberty Lobby, a lobbying organization, to market and sell throughout the United States a manual written by Martin A. Larson entitled "How to Establish a Trust and Reduce Taxation" (hereinafter referred to as the "trust manual"). Liberty Lobby held the rights to sell the trust manual. [2] *118 On October 10, 1979, petitioners transferred by quitclaim deed their personal residence and the furnishings therein to Mr. and Mrs. Lewis B. Furr (who were personal friends of petitioners), in exchange for ten dollars consideration. The estimated fair market value of the residence on the date of the transfer was $60,000. Three months later, Mr. & Mrs. Furr conveyed the residence to the Courtney Smith Family Preservation Trust (hereinafter referred to as the "Trust") in exchange for ten dollars consideration. At all times after the conveyance of the residence to Mr. and Mrs. Furr and to the Trust, petitioners continued to reside in the residence, and made rental payments to the Trust therefor in an unspecified amount. The Trust had been created under the laws of Louisiana pursuant to a Deed and Declaration of Trust dated November 23, 1979. The declaration of trust indicated that the grantor of the trust was Mr. Furr. *119 The trustees of the Trust were Mrs. Smith and petitioners' two adopted children. The corpus of the Trust consisted of two assets: (1) A contract, as described below, between the Trust and Liberty Lobby, and (2) the personal residence of petitioners. On January 9, 1980, Mr. Smith became the manager of the Trust. On January 10, 1980, the Trust contracted to provide the services of Mr. Smith as field director for Liberty Lobby. Sometime thereafter the Trust acquired from Liberty Lobby the rights to market and sell the trust manual throughout the United States. Mr. Smith continued to market and sell the trust manual through 1981. His activities involved travel in his personal motor home in order to conduct seminars on use of the trust manual. [3]
*120 On February 4, 1980, petitioners leased the motor home and their station wagon to the Trust. Mr. Smith continued to use the motor home in a similar manner, but the record does not disclose the manner in which the station wagon was used. Under the lease, the Trust agreed to cover the operating costs of each vehicle and to pay petitioners a monthly fee of $270.14 for the motor home. In March of 1980, in response to a need by petitioners for a larger house, the trustees sold the residence occupied by petitioners and purchased a new home. Petitioners paid rent in an unspecified amount to the Trust for use of the new residence. Petitioners' joint Federal income tax returns for 1980 and 1981 were timely filed. Also, for 1980, Mr. Smith, as manager of the Trust, timely filed a Federal fiduciary income tax return (Form 1041) on behalf of the Trust. Mrs. Smith, as trustee of the Trust, timely filed the Trust's 1981 Federal fiduciary income tax return. Petitioners reported on their 1980 and 1981 Federal income tax returns only the management fees paid to Mr. Smith by the Trust pursuant to his purported contractual agreement with the Trust. The Trust reported on its 1980 and 1981 *121 Federal fiduciary income tax returns the amounts received from Liberty Lobby, Independence House (a subsidiary of Liberty Lobby), Independence Trust, and Sceptre, Inc., for the services rendered by Mr. Smith. The Trust deducted the "fiduciary fees" paid to Mr. Smith and the costs of operating the Trust, which included the costs of operating petitioners' personal residence, motor home, and station wagon. In his notice of deficiency, respondent determined that the Trust was not to be recognized for Federal income tax purposes and that all of the income reported by the Trust in 1980 and 1981 is taxable to petitioners. Respondent disallowed all trust deductions, but allowed petitioners to deduct on their personal tax returns the items properly classified as ordinary and necessary business expenses under section 162 and the items determined to be allowable itemized deductions. OPINION Trust as Valid Taxable Entity
This case involves another of the so-called family trust schemes that the courts have disregarded repeatedly and uniformly for Federal tax purposes. See Neely v. United States,775 F.2d 1092 (9th Cir. 1985); Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982), *122 affg. a Memorandum Opinion of this Court; Vnuk v.Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). [4]
The first issue for decision is whether the Trust is to be recognized as a separate taxable entity for Federal income tax purposes. Petitioners contend that the Trust is a separate taxable entity because it owns income-producing properties in the form of the contract with Liberty Lobby and *123 the property it leases to petitioners. Petitioners argue that the Trust is distinguishable from family trusts considered in other opinions of this Court because the Trust holds the rights to sell and distribute the trust manual, and the Trust, not Mr. Smith, actually sells the trust manual. Petitioners insist that Mr. Smith worked exclusively for the Trust and was paid by the Trust to manage its affairs. Respondent asserts three arguments for not recognizing the Trust for tax purposes. Respondent's first argument is that the income reported by the Trust is taxable to petitioners because the alleged employment of Mr. Smith by the Trust and the agreements made by the Trust to provide the services of Mr. Smith to Liberty Lobby, Independence Trust, and Sceptre, Inc., constitute an anticipatory assignment of income. We agree. A fundamental principle of tax law is that income is taxed to the person who earns it. Commissioner v. Culbertson,337 U.S. 733 (1949); Lucas v. Earl,281 U.S. 111 (1930). An anticipatory assignment of income is the attempt to divert income from the individual who earned it to some other person or entity. UnitedStates v. Basye,410 U.S. 444, 449-450 (1973). *124 Before creation of the Trust, Mr. Smith reported the wages paid to him by Liberty Lobby on petitioners' Federal income tax return. After the Trust was established, the Trust reported wages earned by Mr. Smith on its Federal fiduciary income tax returns. Petitioners' attempt to disguise the source of Mr. Smith's income by use of the Trust does not change the fact that Mr. Smith derived his earnings from promoting and selling the trust manual, and, therefore, the earnings are taxable to him. We previously have determined that attempted assignments of income are ineffective to shift to a trust the liability of an individual for the taxes attributable to his wages. Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Wesenberg v. Commissioner,supra at 1011. Similarly, petitioners' attempted diversion of the taxation of Mr. Smith's income to the Trust must be disregarded. Respondent's second argument for not recognizing the Trust as a separate taxable entity is that the family trust arrangement herein is a sham void of economic substance. As such, all income and deductions of the trust should be attributed to petitioners. We agree. A taxpayer *125 has the legal right to minimize his taxes, or avoid them completely, by any means which the law permits. See Gregory v. Helvering,293 U.S. 465, 469 (1935). However, this right does not confer upon the taxpayer the right to structure a paper entity to avoid tax when that entity possesses no economic substance. When the form of a particular transaction has not altered any economic relationship, we will look through the form of the transaction and apply tax law according to the substance of the transaction. Markosian v. Commissioner,supra at 1241, citing Furman v. Commissioner,45 T.C. 360 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967). We conclude that the Trust lacks economic substance based on the following factors. Mr. Smith's duties on behalf of Liberty Lobby changed little, if at all, after the creation of the Trust. The sole effect of the Trust was the attempt to shift from Mr. Smith to the Trust wages paid for Mr. Smith's services. The alleged sale of petitioners' residence to Mr. and Mrs. Furr was a sham. Mr. Furr was a long-standing friend of petitioners. The estimated fair market value of the *126 property on the date of the "sale" to the Furrs was $60,000, yet the consideration paid was $10. Petitioners continued to live in the residence and use the furnishings therein after the purported sale and after the subsequent conveyance by Mr. and Mrs. Furr to the Trust. The conveyances of petitioners' residence and furnishing was simply a ruse to disguise petitioners as the grantors of the Trust. The acquisition by the Trust of a new residence for petitioners in response to a personal need of petitioners reflects the manner in which the Trust was used as petitioners' personal bank account. Transactions of the trust were more integrally related to the personal needs and desires of petitioners than to the business needs of the Trust. The relationship of petitioners to the property transferred to the Trust did not differ before and after the creation of the Trust. Petitioners continued to live in the same residence after its conveyance to the Trust. Mr. Smith's use of his motor home in his sales activities for Liberty Lobby did not change after petitioners leased the vehicle to the Trust. The Trust simply reflected petitioners' attempt to convert personal income and expenses *127 into the income and expenses of the Trust. The sole purpose of the Trust was the avoidance of tax. The above factors, combined with the lack of a valid purpose, deprive the Trust of economic substance and necessitate our finding that the Trust was a sham. See Neely v. Commissioner,supra at 1094; Schulz v. Commissioner,supra at 493; Markosian v. Commissioner,supra at 1244-1245. Respondent's final argument is that the Trust is invalid under the grantor trust provisions of sections 671 through 677. In light of our determination that the Trust is a sham and is not a separate taxable entity, we will not address this argument. However, we note that numerous similar family trust schemes have been declared invalid pursuant to the grantor trust provisions. [5]
*128 Additions to Tax
The second issue for decision is whether petitioners are liable for the addition to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2). Petitioners bear the burden of proving that the addition to tax is inappropriate. Otis v. Commissioner,73 T.C. 671 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners, however, presented no arguments or evidence concerning the addition to tax. We sustain respondent's determination as to the addition to tax set forth above. The section 6653(a)(2) addition to tax for 1981 is to be computed on an underpayment of $6,924.10. Award of Damages
The final issue for decision is whether the United States is entitled to an award of damages under section 6673. [6] Section 6673 permits this Court to award damages to the United States not to exceed $5,000 against petitioners who have brought or maintained frivolous or groundless proceedings in this Court. Petitioners herein should have been aware of the numerous decisions of this Court that have declared *129 invalid family trust schemes similar to the Trust employed by petitioners. Petitioners' arguments supporting the validity of the Trust consistently have been rejected and are groundless. On this record, we find appropriate the imposition of damages in the amount of $2,500, and we award such damages to the United States against petitioners pursuant to section 6673. Decision will be enteredfor the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. The trust manual provided instructions for creating various types of trusts and contained all of the legal forms required to establish and operate the various trusts. Petitioners used those preprinted forms to create and operate the trust at issue herein.↩
3. During 1981, the Trust entered into additional contracts with Independence Trust and Sceptre, Inc., in which the Trust was to provide the services of Mr. Smith as a consultant. The record reveals little with regard to Independence Trust other than that Mrs. Smith was a trustee thereof. The record also does not disclose the primary business activity or principal parties associated with Sceptre, Inc., and does not indicate the relationship, if any, between Liberty Lobby, Independence Trust, and Sceptre, Inc.↩
4. This Court has decided over 50 of these family trust cases by unpublished Memorandum Opinions, ruling against the taxpayer in each case. In addition, we note that petitioners herein are in the process of appealing to the Fifth Circuit Court of Appeals a Memorandum Ruling of the United States District Court for the Western District of Louisiana dated June 23, 1986, that enjoined and restrained petitioners from selling or promoting the family preservation trust described in the trust manual marketed and sold by Mr. Smith. United States v. Smith,↩ an unpublished opinion (W.D. La., June 23, 1986).
5. See, e.g., Schulz v. Commissioner,686 F.2d 490, 494-496 (7th Cir. 1982); Luman v. Commissioner,79 T.C. 846, 853-855 (1982); Vercio v. Commissioner,73 T.C. 1246, 1255-1259 (1980); Wesenberg v. Commissioner,69 T.C. 1005, 1011-1014 (1978). We also note that the Memorandum Ruling of the United States District Court for the Western District of Louisiana enjoining and restraining Mr. Smith from promoting or selling the trust manual at issue in that action, from which the trust herein is patterned, was based on a finding that the trust prescribed by the manual violated the grantor trust provisions. United Statesv. Smith,↩ an unpublished opinion, slip op. at 13-17 (W.D. La., June 23, 1986).
6. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC. Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. * * *↩